## THE MAIDEN CITY.

### GASTOVER v. THE MAIDEN CITY.

*(District Court, S. D. Alabama. July 30, 1887.)*

1. SHIPPING—CHARTER-PARTY—EXCESS OF FREIGHT.
    Plaintiff chartered a vessel for a lump sum. The master of the vessel made a subcharter-party, the freight earned on which exceeded the lump sum remaining due on the original charter-party. *Held*, that the master was not justified in refusing to pay over such excess to plaintiff by the existence of a separate contract between plaintiff and a third party as to the disposition to be made of such excess.

2. SAME—CHARTER-PARTY—RIGHT TO EXCESS OF FREIGHT—REMEDY AGAINST SHIP.
    If a vessel is chartered, and the master is agent of the owners, it is his duty to collect freight for the charterer, and the ship will be liable for a refusal to pay over on his part unless the master is made the charterer's agent by virtue of some express authority conferred on him by the charter to act as his agent.

In Admiralty. Libel for excess of freight earned.

January 7, 1884, A. Berryman, as the master and agent of the bark Maiden City, of St. John, New Brunswick, then at Newport News, Virginia, chartered that vessel to A. Gastover to take a cargo of cotton from Norfolk, Virginia, to Barcelona, thence to proceed in ballast to Trapani, Sicily, and there take on a cargo of 1,300 tons of salt and carry the same to Boston or Gloucester, Massachusetts. The lump sum to be paid was £1,800—£1,200 at Barcelona, and the balance on delivery of the salt. On the same day the master made a subcharter-party with Richard Gurney, under which the vessel was to proceed from Barcelona to Trapani, and thence take on salt as above. At Barcelona the amount stipulated was paid, and the freight on the salt realized £747, 10s.—about $713.90 more than was, under the lump-sum charter-party, to be paid on the full completion of the voyage. This amount the master refused to pay over, and for it Gastover libels the vessel in Mobile. The master inter-

venes, as claimant, and sets up sundry defenses mentioned in the opinion.

*Overall & Bestor*, for libelant.

*R. H. Clarke* and *Pillands, Torrey & Hanaw*, for claimant.

TOULMIN, J., (*after stating the facts as above.*) The issue 'between the parties is as to the right of libelant to recover from the bark Maiden City the excess of freight collected by the master on the salt cargo under the subcharter-party; that is to say, the amount of freight collected by him over and above that due the ship under the original or lump-sum charter-party.

The several charter-parties should be taken and considered together, in order to ascertain what the contract really was between the parties. The lump-sum charter-party provides that the freights which are earned under the subcharter-parties shall belong exclusively to the charterer, (libelant,) subject to the lien of the ship for freight under that charter-party, and that it shall be paid to charterer's agent, and the salt charter-party provides that the freight under it shall be paid to the master or agent. While the libel does not allege that it was paid to the master, the answer does so state. But the libel avers that the master has failed and refused to pay over such freight in accordance with the contract, and with his duty. The charter-parties were made by the master for the ship, and the subcharter-parties were signed by him in accordance with the terms of the original or lump-sum charter-party. The contention of claimant is,—*First*, that libelant is not entitled to recover at all, because it appears by the evidence that one Barton Myers, the ship-broker who negotiated and procured the charter-parties, is to receive whatever may be recovered in the case, and that libelant has no interest in it; and, *second*, that if libelant is entitled to recover at all, he cannot maintain this suit *in rem* against the vessel, but that his remedy is *in personam* against the master.

It does appear from the evidence that, by some agreement between the libelant and Myers, the latter was to get the benefit of any profit that might be made out of or under the charter-parties over and above the £1,800 provided to be paid on the lump-sum charter-party, and that the libelant agreed to give such profit to Myers in consideration of the latter's guaranty to him against loss on the lump-sum charter-party. Whatever profit Gastover should make he was to let Myers have, and whatever he may recover in this suit he is under obligation to pay over to Myers; hence it is that Myers says Gastover has no interest in the suit, and that the money recovered will belong to him. The master and owner of the vessel had nothing to do with this agreement. It seems to me that it does not affect them in any way, and, in my judgment, it can have no influence on the contract between libelant and the ship, which is the foundation of this suit. The contract on which the proceeding is based is a maritime contract, to which Myers was not a party. It has not been assigned to him. He has no interest in it, so far as the contract itself shows, and he could not, under the evidence, maintain an ac-

tion on it. If a suit can be maintained on this contract, and for the money due under it, my opinion is that Gastover is the proper party complainant, and what he does with the money recovered, or what his obligations are as to it, are, it seems to me, no concern of the claimants.

If the master collected freight money which the libelant was, under the contract, entitled to, then ought he not in equity and good conscience to recover said money? But is the ship liable for it? I think this depends on the question whether the master, in collecting the money, did so as agent of Gastover, or by virtue of his office as master of the vessel. If the master had been authorized to sell the cargo as Gastover's, and to collect and return the proceeds thereof to him, he would have been his agent, and his refusal or failure to pay over such proceeds would have created no liability on the ship and owners, but would have created a personal liability of the master only; or, if the master had been the consignee of the cargo, then all his acts relating to the sale and disposition of it after it was carried to the port of destination would have been as agent of the shipper, and the ship and owners would not be responsible. If he had been especially designated and authorized by Gastover to collect his freight, and he had done so, and then refused to pay it over, it would have been a personal liability only. See *The Waldo*, Daveis, 161; *The Williams*, 1 Brown, Adm. 208. But those acts of the master which are in the scope of his authority and duty as master bind the owner, and create a lien on the vessel. The master was the agent of the owners of the ship in making the charter-parties. If a vessel is chartered, and the master is the agent of the owners, it is his duty to collect the freight money for the benefit of the charterers. 2 Pars. Ship. & Adm. 26; 2 Pars. Mar. Law, 391. But if he fails to collect it, and the charterers had appointed an agent to do so, the ship and owners would not be responsible for such failure. Whenever the master's character as master is dropped, and that of super-cargo or consignee is begun, then his acts in relation to the cargo are not binding on the ship and owners. But the ship and owners are responsible for the acts of the master done by him, as such, in the discharge of his duty, and under the authority possessed by him as master. 2 Pars Ship. & Adm. 29, and note. There is, in my view of this case, a clear distinction between it and the cases cited by the claimant. The case of *The New Hampshire*, 21 Fed. Rep. 924, was where the master dealt with the cargo. His character of master was dropped, and that of super-cargo or consignee began. And I think the court there draws a distinction between that case and one like this, and, in effect, decides that a contract to deliver the cargo to a consignee named in the charter-party or bill of lading, and to collect from him the freight, and to pay it over to the consignee, (or, as in this case, the charterer,) makes the vessel liable for the conversion of the money, if collected by the master, and not paid over by him. In the case of *Welch* v. *McClintock*, 10 Gray, 215, a case at common law, SHAW, C. J., says: "The defendant, as master, had the right, by the general maritime law, to receive the whole of the freight, as by the bill of lading which he had signed, but for the money he would have thus received he would

be accountable to the charterers," etc.; and concludes by saying "that it is a common rule of maritime law that when money is due on bills of lading, whoever is owner, either absolutely or for a particular voyage, it is the right of the master, in the first instance, to collect it."

My opinion is that the contract made by the master, as master and agent of the bark, and to be found in the charter-parties, was a maritime contract, within the scope of his authority as master, under the maritime law, and that it *per se* hypothecates the ship; that by this contract the charterer (libelant) was entitled to the excess of freight collected by the master on the sub-salt charter-party, being the amount over and above what was due the ship; that the master, by virtue of his right as master, and within the scope of his authority as such, and in accordance with the terms of the subcharter-party and the bill of lading, collected said freight; and that on his refusal to pay over the same, the ship and owners are responsible.

It is contended by claimants that while the contract under which libelant claims may be maritime, it is enforceable only by proceedings *in personam* against the master. There are maritime contracts enforceable *in personam* only. This would be the case here if the master had been expressly authorized and requested by Gastover to collect the freight due him, and he had collected it by virtue of this agency. His liability would have been personal to him only. But if he collected it by virtue of his office and authority as master, as I find he did, then, as I have already said, the ship and owners are responsible, and a proceeding *in rem* against the vessel is maintainable. The ship's contract was that the master should collect the freight and should pay that part due Gastover over to him. He collected it, but he has failed to pay it over.

The decree is that libelant recover of the ship and owners the sum of $693.31, with interest from August 20, 1884.

There is also a claim for demurrage set up in the answer as a defense —indeed, as the main defense—to this suit. But I take it that this claim has been abandoned, as there was no contention for it on the trial of the cause. I may add, however, that, in my judgment, such claim cannot be maintained on the evidence in the case.