THE PORT ADELAIDE.[1]

PERRY v. THE PORT ADELAIDE.

(District Court, E. D. New York. December 12, 1893.)

CHARTER PARTY—WHOLE VESSEL CHARTERED — UNAUTHORIZED DEVIATION— EXTRA FREIGHT PROPERTY OF CHARTERER—LIEN.

Libelant chartered the whole of a ship, and loaded her for a voyage from New York to Aden, Amoy, Shanghai, and Yokohama. The ship-

[1] Reported by E. G. Benedict, Esq., of the New York bar.

owner officered and manned the vessel. At Shanghai the ship loaded cotton on her own account for Kioto, whence she thereafter proceeded to Yokohama, and delivered in good order the balance of her original cargo. The charter party contained no provision as to shipment of cargo on ship's account, and no authority to proceed to Kioto. Libelant sued to recover the freight collected for cargo transported from Shanghai to Kioto, and also to recover damages for breach of charter. *Held,* that the ship was answerable to libelant either for the freight from Shanghai to Kioto, or for damages for breach of charter, but not for both, and that a maritime lien against the ship existed in favor of libelant for either amount.

*In Admiralty.* Libel for freight collected and for breach of charter. Decree for libelant.

Foster & Thomson, for libelant.

Convers & Kirlin, for claimants.

BENEDICT, District Judge. The steamship Port Adelaide was chartered by the libelant for a voyage from New York to Aden, Amoy, Shanghai, and Yokohama. By the terms of the charter party, "the whole of said vessel, with the exception of the necessary room for the crew, and storage of provisions, coals, sails, and cables," was chartered to the libelant. The charter party also contained the following clause: "Charterers to have the full reach of vessel's holds, spare bunkers, cabins, &c., the same as if the steamer was loading for owners' benefit." The shipowners officered and manned the vessel, and were to receive "for the use of said vessel during the voyage aforesaid the sum of £4,500." Bills of lading were to be signed by the master, and any difference between the charter money and the freight named in the bills of lading was to be settled before the vessel's departure from New York.

Under this contract the charterer furnished the steamer a full cargo from New York, and, the freight named in the bills of lading being less than the £4,500 named in the charter party by the sum of £453.4.7., the difference was paid by the libelant to the ship's agent before the ship's departure from New York. None of this cargo was shipped the libelant, but by other shippers found by him. It was to be delivered at the ports of Aden, Amoy, Shanghai, and Yokohama, respectively, as per the bills of lading signed by the master; the greater proportion of the cargo being deliverable at Aden, Amoy, and Shanghai. The steamer proceeded to those ports, and there duly delivered the cargo consigned to those ports. From Shanghai the steamer was bound, by the terms of the charter, to proceed direct to Yokohama, and there deliver the remainder of her cargo. Instead of so doing, the master of the steamship, without authority from the charterer, took on board at Shanghai a quantity of cotton to be transported in the steamship upon freight from Shanghai to the port of Kioto.—a port not within the terms of the charter. The freight on this cotton was collected by the ship's agent, and turned over to the shipowners. From Kioto the ship proceeded to Yokohama, and there safely delivered the remainder of the cargo that had been shipped in New York for that port. This deviation from the voyage described in the charter

caused a delay in reaching Yokohama of some two or three days. So far as appears, however, none of the consignees of the cargo delivered in Yokohama made any complaint of the deviation to Kioto, or any demand upon the charterer by reason thereof. And now the charterer files his libel against the steamship, seeking to recover the amount of the freight received by the shipowners for the transportation of the cotton from Shanghai to Kioto, and also damages for the deviation.

In regard to the claim for the freight earned by the ship in transporting cotton from Shanghai to Kioto, the contention of the claimants is that the charter party should be interpreted to mean that the charterer was to have the right to ship in New York a full cargo for delivery at the ports of Aden, Amoy, Shanghai, and Yokohama, but, when once the full space of the vessel had been occupied by him, the right to furnish further cargo was exhausted; that the shipowners, by virtue of their possession and control of the ship, had the right to the space in the ship left empty by the delivery of the cargo at Aden, Amoy, and Shanghai, and consequently were entitled to transport on the ship's account the cotton transported from Shanghai to Kioto.

To this view of the effect of the charter party, I cannot assent. As I read the charter party, it gave the charterer the right to have the ship perform the voyage from New York to Aden, then to the port of Amoy, then to Shanghai, and then to Yokohama, or to any of them, either full or with sufficient cargo for ballast, shipped by the libelant or his shippers, and not otherwise; and it gave the shipowners no right to take in cargo on the ship's account at any port during the voyage. The loading of the ship on ship's account at Shanghai increased the weight of the ship during the rest of the voyage, and by so much retarded her progress. It might also well be that a shipment of cargo on the ship's account from Shanghai to Kioto would have an important effect upon the ventures of those merchants who, by agreement with the libelant, shipped goods in New York for Yokohama under a charter which gave the whole ship to the charterer. Authority for a shipment of cargo on ship's account should therefore be found plainly set forth in the charter party. No such authority is stated in the charter party, and in my opinion such authority cannot be implied from the fact that the possession and control of the ship remained in the shipowners. The possession and control of the ship by the owners during the voyage was for the sole purpose of the ship's navigation during the voyage. Certainly, no authority to proceed to Kioto, a port not included in the voyage described in the charter, is to be found in the charter party.

In my judgment, therefore, the shipment of cotton in Shanghai for Kioto on ship's account was a breach of the charter party. But as it appears that the ship proceeded from Kioto to Yokohama, and there delivered in good order the cargo shipped in New York under the charter party for the port of Yokohama, and in view of the terms of the charter party, it seems to me that the charterer is entitled to adopt the act of the shipowners in taking in cargo at

Shanghai for Kioto, and to recover the freight earned by the ship for the transportation of that cargo, or, at his option, to treat the transaction as a breach of the charter party, and hold the ship for the damages caused thereby. I do not see how the charterer can be entitled to the freight earned by the breach of the charter party, and also to damages for such breach.

It is said that if the freight collected at Kioto, and paid over to the shipowners, belongs to the charterer, the libelant's claim is against the shipowners for money had and received, and is not within the jurisdiction of the admiralty. But the service performed in earning the freight was a maritime service, and the duties of the respective parties arise out of, and are fixed by, the terms of a charter party of the ship, and the ship was the instrument used in performing the service. Under such circumstances, it is my opinion that a maritime lien in favor of the charterer attached to the ship for the amount of the freight earned by the steamship by transporting the cotton from Shanghai to Kioto, and withheld from the charterer by the shipowners.

The drift of the libelant's argument leads me to suppose that, if compelled to elect, the libelant will elect to recover the freight earned by the ship; and a decree for the libelant for that amount will therefore be entered, unless the libelant gives notice of electing to receive the damages instead, in which case a reference will be had to ascertain the amount of such damages.

The parties will doubtless agree as to the amount of the freight collected.