## THE SEGURANCA.

### DIXON v. GEORGE W. HOWE & CO.

(Circuit Court of Appeals, Fifth Circuit. February 13, 1918. On Application to Modify Order, February 27, 1918. Rehearing Denied April 3, 1918.)

No. 3127.

1. APPEAL AND ERROR ⟨⟩329—PARTIES TO APPEAL—BRINGING IN BY AMENDMENT.

    The Circuit Court of Appeals may permit a party, which has been omitted from an appeal and not summoned and severed, to be brought in by amendment, where it appears and waives citation.

2. PRINCIPAL AND AGENT ⟨⟩169(2)—CHARTER BY AGENTS—RATIFICATION BY OWNER.

    The owner of a vessel, which adopted and carried out a charter party, and in a suit by the charterer based a cross-libel thereon, is bound by its terms, although it was originally made by agents without authority.

3. SHIPPING ⟨⟩51—CHARTERS—COLLECTION OF FREIGHT MONEY—LIABILITY OF VESSEL.

    The master of a ship, although the agent of the owners, is under duty to collect freight money for the benefit of a charterer; and where the duty exists, both the vessel and owner are liable for his acts or omissions in respect to its exercise, and for stronger reason the ship is liable, where the collection is made by the owners themselves.

4. SHIPPING ⟨⟩110—CHARTERS—LIABILITY FOR IMPROPER STOWAGE.

    Where, as required by the charter, a ship was loaded by stevedores employed by the charterer, but "under the supervision of the master," the charterer cannot be held liable for improper stowage.

5. SHIPPING ⟨⟩171—CHARTERS—DEMURRAGE—CESSER CLAUSE.

    Where all the terms, conditions, and exceptions of the charter party are by recital incorporated in the bills of lading signed by the master, the charterer is protected by the cesser clause from liability as to all demurrage incurred after the signing of the bills of lading.

6. SHIPPING ⟨⟩49(2)—CHARTERS—MISTAKE IN SETTLEMENT—INTEREST.

    The owners of a chartered ship *held* entitled to interest on an amount due them from the charterer, but retained by the charterer through a mutual mistake when the settlement was made.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in admiralty by George W. Howe & Co. against the steamship Seguranca and Hiram Dixon, master, claimant. Decree for libelant, and claimant appeals. Modified and affirmed.

J. C. Hollingsworth, of New Orleans, La., for appellant.

John C. Avery, of Pensacola, Fla., and William Grant and Wm. B. Grant, both of New Orleans, La., for appellee.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. [1] Upon the hearing of this appeal, counsel for the appellee directed the court's attention to the fact that the National Surety Company, surety, on the stipulation for the release of the Seguranca, which was seized under the libel, and which was a party respondent in the final decree rendered in the District Court jointly against the claimant and itself, was not made a party to the appeal, that there had not been a summons and severance as to it, and that it had not been notified of the appeal. On the authority of The Bylands, 231 Fed. 101, 145 C. C. A. 289, and of Estes v. Trabue, 128 U. S. 225, 9 Sup. Ct. 58, 32 L. Ed. 437, it is suggested that it is our duty to dismiss the appeal, of our own motion, for want of jurisdiction of the necessary parties to the appeal. The appellant resists this motion, and has applied for leave to amend his petition for an appeal and the citation, by making the National Surety Company a party to the appeal, and has accompanied his application with the voluntary appearance of the National Surety Company, and a waiver of service of citation, and a joinder in the appeal. In accordance with our ruling in the case of The Mary B. Curtis, 250 Fed. 9, decided at this term, and for the reasons there given, we will allow the amendment of the appeal by the making of the National Surety Company a party to it, and, the amendment being considered made, as prayed for, the appeal will be allowed to stand for decision upon the merits.

The first contention of the appellant is that the District Court had no jurisdiction to proceed in rem, because (1) there was no charter party between the owners of the Seguranca and the libelants, on which to base the ship's liability; and (2) because the cause of action, if any existed, was a personal one against the owners, and not the proper foundation for a proceeding in rem.

[2] The real cause of action of libelant was for freight money collected by the shipowners from a consignee at destination, which was the property of the charterers of the ship, and was received for the use of the charterer and not turned over to them. The original libel had attached to it as an exhibit what purported to be a copy of the charter party, on which the libel proceeded. As a matter of fact, however, the copy attached to the libel was not that of charter party between libelant and respondents, but of one between respondents and Allen and Friedrichs, who are not parties to the libel. The facts were that the ship was originally chartered by the respondents to Allen and Friedrichs for a certain amount, and was thereafter again chartered to libelant for an increased amount. The second charter party was signed, on behalf of the owners, by Allen and Friedrichs, as agents. Their authority to act for the owners is disputed.

We find it unnecessary to determine whether Allen and Friedrichs originally had authority to sign the charter party on behalf of the owners. The record abundantly shows that the owners ratified the second charter party with appellee, both in correspondence prior to

the filing of the libel and by their conduct in the proceeding itself. In paragraph 3 of their original answer they deny the allegations of article third of the libel, "except the averment by libelant that a charter party was entered into between the libelant and the steamship Seguranca of date May 28, 1915, presently objecting to any and all averment of the contents thereof, and the said parties will object to any other proof than the document itself." The original document was introduced in evidence on the hearing on March 28, 1916. The appellant, as claimant of the steamship Seguranca, filed a cross-libel against libelant, relying in it upon rights claimed to have been given him by "the charter party averred in the original libel, and the basis of the said libel by paragraph three thereof," and asking affirmative relief based upon provisions of said charter party, and asking that libelant be required to furnish a bond to respond to the cross-libel under admiralty rule 53 (29 Sup. Ct. xlv), and that proceedings under the original libel be stayed until such security was given.

By expressly admitting in his answer the execution of a charter party between appellant and appellee of like date as the one sued on, and by relying upon it as a basis for relief in the cross-libel, we think the appellant is concluded from disputing that the second charter party was binding on him and the ship, whatever may have been the original incapacity of Allen and Friedrichs to execute it as agents for the owners. This would be true, even though, as appears to have been the case, the original charter party was between the owners and Allen and Friedrichs, and at a lower rate of freight, and the charter party on which the libel is based was in its inception a contract between Allen and Friedrichs and appellee at a higher rate of freight. Its subsequent adoption by the owners of the Seguranca justified the libel against them based on it.

[3] The appellant also contends that, conceding the charter party to be binding on appellant, the liability sought to be enforced by the libel was a personal one against the owners, and would not sustain a proceeding in rem against the Seguranca. The lack of authority in the master to execute the master's five days' note may be conceded, and still the libel may be sustained in rem. The master, though he may be the agent of the owner, is under a duty to collect freight money for the benefit of the charterer, and where the duty exists, his owners are liable for his acts or omissions in respect to its exercise. Parsons, Shipping and Admiralty, vol. 2, § 28; The Port Adelaide (D. C.) 59 Fed. 174; Id., 62 Fed. 486; The Maiden City (D. C.) 33 Fed. 715. The master, therefore, had implied authority to bind the owners and the ship in the matter of collection of freight money, due the charterers.

In this case, the owners of the Seguranca themselves made the collection, of the freight money due the charterers on the consignment of the Pensacola Lumber & Timber Company, and the master's authority is not involved. If the act or omission of the master, when he has authority to collect freight money belonging to the charterer, is binding on the owners and on the ship in a proceeding in rem (as was held in the cases cited), surely the liability of the owners for the making

of such collections and refusing to account to the charterer therefor, can also be enforced in a proceeding in rem against the ship. It is conceded that the owners collected the freight money due the charterers on the consignment of the Pensacola Lumber & Timber Company on arrival of the Seguranca at destination, and still withhold the same.

The only possible answer to the liability of the ship for the amount so withheld, as we view it, would be the existence of a valid offset in favor of the owners. The plea of estoppel is without merit, in view of the reservation in favor of appellee, expressed in terms in the agreement on which it is based.

[4] The appellant claimed as an offset damage alleged to have been suffered by him because of improper loading of the Seguranca by the stevedores employed by the appellee as charterer, consisting in the expense of removal of part of the cargo and loss of revenue, claimed to have been due to shortage of cargo due to improper loading. The evidence is conflicting as to whether the admitted tenderness of the ship after it was loaded was due to improper stowage of the cargo or to the alleged crankiness of the ship herself. We find it unnecessary to determine as between these causes. Section 15 of the charter party provided that:

"The charterers or their agents shall provide and pay a stevedore to do the stowing of the cargo under the supervision of the master."

One Tracy was employed by the charterer to do the loading. His testimony is to the effect that the loading was done in a manner known to and approved by the master, and that additional cargo of resin, a subject of complaint by the appellant, was put on the ship only after the intention to do so was made known by Tracy to the master, and that the master made no objection, until after it was loaded on the ship, and that the first objection or protest made by the master was after the ship was loaded and when a list became apparent. It is true that the evidence of the master, Dixon, is partly in conflict with Tracy's. The District Judge, after hearing the evidence of both, came to the conclusion that any improper stowing of cargo was due to the joint fault of the stevedore, Tracy, and the master, Dixon, and under the terms of the charter party, it was made the master's duty to supervise the stowing of the cargo. Under these circumstances, we agree with the conclusion reached in the District Court that the appellant should take nothing by reason of this offset.

[5] The offset based on demurrage, claimed for delay in unloading at destination, is covered by cesser clause of the charter party, which provides:

Sec. 20. "Charterers' responsibility under this charter shall cease as soon as the cargo is shipped and bills of lading signed, provided all the conditions called for in this charter have been fulfilled or provided for by bills of lading."

The bills of lading provided that:

"All the terms, provisions, and exceptions [of the charter] are herewith incorporated and form a part hereof."

The bills of lading making equivalent provision with the charter for the owner's security, the cesser clause became fully operative in favor of the charterer as to all demurrage incurred after the signing of the bills of lading.

[6] In the adjustment between the charterer and the master at Pensacola, before the ship sailed, through a mistake in rate of exchange, the master for the owners received $677.50 less than the owners were entitled to. The District Judge allowed this to appellant as an offset, but denied the appellant interest on it from the time of settlement. The District Judge allowed the appellees interest on the amount of freight money held back by the owners. "The allowance of interest by way of damages in cases of collision, and other cases of pure damage, * * * is in the discretion of the court." The Scotland, 118 U. S. 507, 6 Sup. Ct. 1174, 30 L. Ed. 153. The claim of appellant for the recovery of the $677.50 was not in the nature of a recovery of pure damage. It was money retained by mutual mistake by the charterer, and the remedy for its recovery would be in the nature of an action for money had and received by the charterer for the use of the owners, which is in its nature a contractual liability. In view of this fact, we think that the amount should bear interest from the time it should have been paid. As the District Court allowed interest in favor of the appellees on the principal claim, we think interest should have been allowed the appellant on the offset, from the date of settlement in Pensacola to the date of final decree.

In this respect, the decree of the District Court is modified, and, as so modified, is affirmed.

## On Application to Modify Order.

PER CURIAM. This cause coming on to be heard upon the application of the appellee to modify the former order of this court, modifying and affirming the decree of the District Court, and adjudging that appellant have and recover of the appellee the cost of the appeal, by disallowing the appellant any costs of appeal, and it being made to appear that the appellant and cross-libelant recovered upon his appeal less than the sum or value of $300, exclusive of costs:

It is ordered that the former order of this court be modified, and that the decree of the District Court, as modified by said former order of this court, be affirmed, but that the appellant and cross-libelant recover no costs, but is adjudged to pay the costs of appeal, for which execution may issue.