COMPANIA ANONIMA VENEZOLANA DE NAVEGACION, Libellant,

v.

C. V. MANDRY, Individually and d/b/a Cia Transmares, Respondent.

No. 3586.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 23, 1959.

Terriberry, Rault, Carroll, Martinez & Yancey, Walter Carroll, Jr., New Orleans, La., for libellant.

**291**

Chehardy & Werhan, John C. Werhan, New Orleans, La., for respondent.

J. SKELLY WRIGHT, District Judge.

Libellant is a steamship company operating under the name Venezuelan Lines by and through its agents in New Orleans, Texas Transport & Terminal Co., Inc. Cristobal V. Mandry, an individual, was and is the proprietor of a freight forwarding company known as Cia Transmares in the city of New Orleans. The claim here is for $919.80, being the freight charges on two consignments of pullet eggs from the Port of New Orleans, Louisiana, to the Port of La Guaira, Venezuela.

Respondent is a freight forwarder, that is, he prepares shipping documents for shippers and makes shipping arrangements. In October 1956 Mandry was engaged by Southern Export Company, the shipper, to prepare the shipping documents in connection with the shipment in suit covering carriage in a vessel owned and operated by Alcoa Steamship Company. The shipping arrangements with Alcoa had been made previously by the shipper. Subsequently Mandry was advised by Alcoa that its ship carrying the cargo had been involved in an accident in the Mississippi River and that the two consignments of pullet eggs were being transshipped via the Venezuelan Lines. Alcoa requested Mandry to prepare a new set of shipping documents for this shipment. Mandry complied with Alcoa's request and received $12.50 for his services.

In due course, Mandry, in keeping with the custom in the Port of New Orleans, through his employee, A. K. Dial, picked up at the office of Texas Transport & Terminal prepaid bills of lading covering the shipment on the Venezuelan Lines. In return for the prepaid bills of lading, Dial signed, also in due course, a due bill covering the freight on the shipment. The due bill provided in part: "In consideration of receiving signed Bills of Lading indicating prepayment of freight, we promise to pay Texas Transport & Terminal Co., Inc.,

New Orleans, this freight as indicated, Within Seven Days From Date."

The use of due bills to guarantee unpaid freight at the time of issuance of prepaid bills of lading is a common practice in the Port of New Orleans. Prior to the transaction here, respondent had established "due bill privileges" with libellant's agent, that is, Mandry had applied [1] to Texas Transport for such privileges and, after a credit investigation, received them. The shipper of the pullet eggs, Southern Export Company, had no arrangements with Texas Transport for due bill privileges or other credit. Consequently, in the absence of prepayment of freight, the prepaid bills of lading would not have been released except on the execution by the respondent of a due bill covering the freight charges.

Respondent claims that the due bill was signed by Cia Transmares as agent for the shipper, that libellant knew respondent was acting as such, and that under the most elementary principles of agency, he cannot be required to pay the freight charges now merely because libellant has been unable to collect from Southern Export Company.

There can be no question that libellant knew Mandry was acting as a freight forwarder and that Southern Export Company was the shipper. In spite of its suggestion to the contrary, this fact clearly appears not only on the bills of lading but on the due bill itself. Moreover, libellant knew that Mandry was nothing more than a freight forwarder which, of course, is the agent of a shipper rather than the shipper itself. If that were all this record showed, under the agency principles relied on by respondent, the libellant would be required to look to the shipper alone for payment of freight. Restatement, Agency §§ 155, 328.

■ But there is more. Respondent applied in writing to the Texas Transport for due bill privileges. He wanted the right to receive prepaid bills of lading on credit, by merely having the freight costs charged to his account. On application, and after a credit investigation, libellant gave Mandry this right. Consequently, Mandry cannot now rely on the principle of nonliability of an agent when he himself has made a contract with libellant to pay the freight charges where he has been provided with prepaid bills of lading. Alcoa Steamship Co. v. Graver Tank & Mfg. Co., City Ct., 124 N.Y.S.2d 77, 1953 A.M.C. 844; Restatement, Agency § 320.

■ Respondent's suggestion that his employee, Dial, was not on record with Texas Transport as one with authority to sign due bills for him is without merit. The record shows that respondent, through Dial, accepted the prepaid bills of lading. It is too late now to challenge Dial's authority or repudiate his act. The Seguranca, 5 Cir., 250 F. 19; Restatement, Agency § 98.

1. The application, addressed to Texas Transport & Terminal Co., Inc., reads as follows:

"Dear Sirs:

"We request the facility of obtaining release of signed Bills of Lading prior to payment of freight and other charges for shipments made in our name, or in name of our Clients in vessels for which you act as Agents of Owners.

"In consideration of being granted such privilege, we agree to conditions of your 'Due Bill' as contained herein:

" 'In consideration of receiving signed Bills of Lading indicating prepayment of freight, we promise to pay Texas Transport & Terminal Co., Inc., New Orleans, this freight as indicated, Within Seven Days From Date.

" 'This due bill, until paid, will act as a lien on the goods for the amount of freight for which it is given.'

"For your purposes we list hereunder the names, Title and specimen signatures of those persons we authorize to sign such 'Due Bills.' "