ALCOA STEAMSHIP COMPANY, INC.,
v.
COMFORT SPRING CORPORATION,
Defendant and Third Party
Plaintiff,
A. K. White & Company, Inc., Third
Party Defendant.
Civ. A. No. 9716.

United States District Court
D. Maryland.

Feb. 20, 1959.

Randall C. Coleman, Jr. and William A. Grimes, Baltimore, Md., for plaintiff.

Albert L. Sklar, Baltimore, Md., for defendant, Comfort Spring Corp.

R. DORSEY WATKINS, District Judge.

This is an action by Alcoa Steamship Company, Inc. (Alcoa) against Comfort Spring Corporation (Comfort), for the recovery of $3,571.61, comprising the ocean freight on three shipments of spring assemblies by Comfort on Alcoa's vessels to Puerto Rico, as follows:

| Vessel | Bills of Lading | Sailing Date | Ocean Freight |
|---|---|---|---|
| S. S. Alcoa Roamer | B-3241–3247 | 11–14–56 | $2,007.99 |
| S. S. Alcoa Ranger | B-3224 and B-3226 | 12– 4–56 | 1,338.29 |
| S. S. Alcoa Puritan | B-3161 | 12–18–56 | 225.33 |

For many years Comfort had made shipments on Alcoa's vessels from Baltimore, Md. to Puerto Rico and South and Central American ports. Alcoa's representatives directly solicited the business of Comfort, calling regularly and usually not less frequently than once every three weeks. Bookings would be

made through such freight solicitors or by telephone calls from Comfort to Alcoa. Space on particular ships would be confirmed directly to Comfort, and thereafter Comfort would contact Alcoa about delivery dates. Comfort would arrange for the delivery of freight to the vessel, and Comfort's truck driver would be given dock receipts by Alcoa.

In accordance with long-established custom, Alcoa would make out bills of lading for shippers and obtain export declarations and other shipping documents, for which a charge would be made; or if bills of lading were presented by freight forwarders, Alcoa would complete them by filling in, without charge, the date, vessel and freight charges. For a number of years Comfort had used Kennedy, White & Company, and later A. K. White & Company, Inc. (White),[1] as a freight forwarder. For at least a year before the shipments in controversy White had acted for Comfort at Comfort's instance. As freight forwarding agent for Comfort, White prepared bills of lading on Alcoa's forms, showing Alcoa as shipper and White as freight forwarder, and submitted them to Alcoa for insertion of the freight charges and signature.

After Alcoa had completed the bills of lading they were returned to White with a freight bill on Alcoa's billhead, which bore the notations:

"To Comfort Spring Corp. c/o A. K. White & Co.

"We Have Charged Your Account As Follows:

"To Ocean Freight and Charges As Follows:",

followed by a listing of the bills of lading, and the charges thereon.

The freight bills were for the net freight charges. Although Alcoa did pay brokerage to White (and other forwarders) on certain shipments, none was paid by Alcoa to White on any shipments to Puerto Rico, as there was no provision for brokerage under the Puerto Rico Conference tariff.

Alcoa's short form bill of lading (expressly stated to be "subject to all the terms, provisions, stipulations and conditions stated in the Alcoa Steamship Company, Inc. regular long form of bill of lading"), customarily used, provided:

"Freight must be paid the carrier in cash on issuance of this bill of lading, failing which the forwarder or other person presenting this bill of lading for signature shall be deemed authorized by the herein named shipper to sign a due bill for the freight on shipper's behalf which shall bind the shipper to pay the freight to the carrier."

Clause 17 of Alcoa's long form bill of lading contained similar language, and also provided:

"* * * The shipper and the consignee shall be jointly and severally liable to the Carrier for the payment of all charges and for the performance of the obligation of each of them hereunder."

In the preparation of the short form bills of lading with respect to the shipments on November 14, 1956 and December 4, 1956, White inserted the legend "Freight Prepaid". In fact, the freight was not prepaid; and no due bills were signed by White, either on its own behalf, or that of Comfort, for any of the three shipments in suit.

White invoiced Comfort "To charges as below", which charges, with respect to each short form bill of lading, were for "Top Wharfage", "Ocean Freight" (in the exact amount charged by Alcoa), "Forwarding Fee" and "Marine Insurance." Accompanying these invoices were carbon copies of Alcoa's billings to Comfort care of White.

The charges of White associated with the three shipments in question were paid by Comfort to White by checks dated November 26, 1956, December 10,

---

1. Named as third-party defendant. White was served, but has not appeared or filed any pleadings. Comfort asks judgment over against White if judgment is rendered against Comfort.

1956 and December 26, 1956, which checks were promptly deposited by White.

Alcoa in New York kept ledger accounts by vessels and voyages. Temporary IBM cards were made. Such cards would show the name of the vessel, the voyage number, the bill of lading number and the amount of the invoice. If the transaction was handled by a freight forwarder, since the check would be expected from him, his name would appear on the card; otherwise the name of the shipper would be used. The use of the forwarder's name was for ease of identification. As a forwarder may handle shipments for hundreds of shippers, the use of his name would represent one account instead of a series of accounts. When the items on an IBM card had been paid, the card would be destroyed, but the bills of lading were kept as permanent records.

Accounts are considered delinquent after thirty days; but as accounts are checked at the end of a month, an account such as for the November 14, 1956 shipment would not be considered in arrears until the tabulation made after the end of December 1956.

In January 1957 when it was determined that the items on the White card (comprised of the three Comfort shipments in suit, and some by others than Comfort) had not been paid, the Alcoa Baltimore office was so advised. The freight traffic representative who called on White, other forwarders and shippers, was told before the middle of January 1957 that amounts on the White card were outstanding. He tried in vain for more than a week to locate White's president, and finally was told by White's assistant that a check would be sent.

A check dated January 24, 1957, covering the Comfort and other accounts, was sent by White to Alcoa. It was deposited January 25, 1957, and returned because of insufficient funds, and endorsements cancelled and protest made on January 29, 1957.

In the meantime, Alcoa's "outside man" who solicited Comfort had been told on or about January 21, 1957, that the Comfort items had not been paid by White. He then talked to one of Comfort's representatives and so advised him. At that time Comfort had another shipment booked. Comfort requested that the bill of lading for that shipment be given to White, but that the bills for Alcoa's freight charges be sent to Comfort directly, and not through White. Accordingly, on January 30, 1957 and February 6, 1957, invoices

"To: Comfort Spring Corp.
"c/o A. K. White & Company"

were sent to Comfort by Alcoa, and were promptly paid.

On February 7, 1957, Alcoa wrote Comfort stating that the freight charges on the three shipments in question "handled for you through" White had "not as yet been settled with us"; and that "Since your agents have failed to take care of the amounts due us, we must refer these items to you for payment."

Shortly thereafter, the White IBM cards were destroyed and replaced by cards containing identical items except the change of name to that of Comfort.[2]

Ordinarily, the shipper is primarily liable to the carrier for freight, 13 C.J.S. Carriers § 316b; Louisville & Nashville Railroad Company v. Central Iron & Coal Company, 1924, 265 U.S. 59, 67, 44 S.Ct. 441, 68 L.Ed. 900. Comfort in substance contends that although in some respects White was Comfort's agent, Alcoa extended credit exclusively to, and intended to deal only with, White, and that Alcoa could not thereafter resort to Comfort for payment.[3]    2 Am.

---

2. There is nothing to indicate that Comfort was aware of any of Alcoa's internal bookkeeping until it was developed at the trial.

3. In May 1957, White attempted unsuccessfully to make an arrangement with creditors. The President of White was last heard of from Pakistan; whether East or West Pakistan does not appear from the evidence.

Jur., Agency, section 356; A.L.I. Restatement of the Law of Agency, section 147; 3 C.J.S. Agency § 243.

Comfort relies heavily on the decision of the City Court of the City of New York in Alcoa S.S. Co. v. Graver Tank & Mfg. Co., Inc., City Ct., 1953, 124 N.Y.S.2d 77, 78. In this court's opinion, even assuming the correctness of the decision in that case, the facts therein are so materially different from those in the instant case that the two cases are clearly and readily distinguishable.[4]

(a) In the Graver case, the forwarder "had a credit rating with" Alcoa, "being on" Alcoa's "approved list of open accounts." There is no testimony to this effect in this case.

(b) In Graver, the shipment was arranged through the forwarder; here, the shipping arrangements were directly between Alcoa and Comfort.

(c) In Graver, a brokerage was paid the forwarder by Alcoa; here, White's sole compensation ("forwarding fee") was paid by Comfort.

(d) In Graver, Alcoa "issued to the freight forwarder a prepaid bill of lading in return for the latter's due bill." Here the bills of lading were issued in conjunction with freight bills addressed to Comfort, stating that Alcoa had charged Comfort's account.

(e) In Graver, Alcoa attempted to collect from the forwarder for nearly nine months, and did not demand payment from the shipper until the forwarder had been adjudicated a bankrupt. Here, demand was made upon Comfort not more than three weeks after the account became delinquent.

(f) In Graver, the freight charge on Alcoa's books "was indicated as a debit item against the freight forwarder and not against the defendant." Here the

temporary cards carried the forwarder's name, but referred to permanent basic records identifying Comfort as the shipper.

(g) In Graver, the court found that the arrangement between Alcoa "and the freight forwarder was not made for defendant's benefit." The facts in this case show that the "arrangement" was presumably for Comfort's benefit, since it paid White a forwarding fee with respect to each bill of lading.

When Alcoa delivered to White the freight bills made out to Comfort it was simply using the channel selected by Comfort for transmission of the bills of lading. Whatever might have been the consequence if White, with Alcoa's knowledge and consent, had made a single charge to Comfort for all services, including the freight charges therein but unidentified, such was not the case. Comfort did in fact receive, through White, the very freight bills charged by Alcoa to Comfort's account. These were not marked by Alcoa as paid. It was therefore incumbent on Comfort to see that they were discharged. This it undertook to do by payment to White of the freight bills, and White's own charges. Under these circumstances, payment by Comfort to White was not payment by Comfort to Alcoa.

Comfort is therefore liable to Alcoa in the amount of $3,571.61, with interest from January 28, 1957,[5] and costs. Let judgment so be entered in favor of Alcoa against Comfort; and let judgment over in the same amount be entered in favor of Comfort against White.

The foregoing opinion embodies the court's findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a), 28 U.S.C.A. If either Alcoa or Comfort desires other or further findings and conclusions, they may be submitted.

4. Comfort claims that the only difference was the addition to the short form bill of lading of the language quoted therefrom in this opinion; and that the change was one in form only, and not complied with, since no due bills were signed. As pointed out in the opin-ion herein, this court does not agree with this analysis or conclusion.

5. The last date on which, under the testimony, it could be found that Comfort was notified of nonpayment of the freight charges.