John C. Leonforte, J.
This action was commenced by plaintiff, a steamship company, against defendant, a consignor of goods, to recover the sum of $537.43 for work, labor and *171 services allegedly performed in transporting defendant’s goods from New York City to Beirut, Lebanon, on plaintiff’s vessels. Defendant arranged these shipments through American Commercial Transport Corp., a freight forwarder. According to plaintiff, neither the defendant nor the freight forwarder had a credit rating with plaintiff before the first shipment of December 12, 1957. It is the plaintiff’s contention that it gave credit to both the defendant and the freight forwarder for the freight charges involved in this case. It is admitted by plaintiff that upon collection of these freight charges by the freight forwarder a brokerage commission would be paid by it to the freight forwarder. It also appears that plaintiff issued to the freight forwarder prepaid bills of lading in return for the latter’s due bills. After presenting these due bills to the defendant, the freight forwarder received a check in payment of the freight charges and it appears that the said check was made payable to the freight forwarder. The plaintiff attempted to collect the freight charges from the forwarder but was unable to do so. The forwarder then went out of business and plaintiff made demand for payment upon the defendant, which was indicated in the bills of lading as the consignor or shipper.
In this case it is immaterial whether or not the freight forwarder was defendant’s agent when the goods were shipped. The important issue in this case was whether or not the freight forwarder was plaintiff’s agent or the defendant’s agent for collection purposes. In my opinion, the conduct of plaintiff in dealing directly with the freight forwarder and in looking to it for payment established a factual relationship between them to which were attached the legal cod sequences of agency and it is immaterial whether such parties intended the legal consequences of the relation to follow.
In any event, it is clear that the plaintiff relied upon the credit of the freight forwarder and not upon defendant’s credit and that this arrangement between plaintiff and forwarder was not made for defendant’s benefit, notwithstanding the fact that plaintiff alleged it gave credit to defendant also. As was stated in Alcoa S. S. Co. v. Graver Tank & Mfg. Co. (124 N. Y. S. 2d 77, 78-79) “ [i]t is fair to assume that it was advantageous to the plaintiff, a steamship company, to maintain a good and continuous relationship with the freight forwarder * * *. It was better for the plaintiff to deal with the freight forwarder, before the latter became a bankrupt, thau with a shipper with whom it might expect to have only occasional or sporadic business or contacts.”
*172 This case is similiar to the Alcoa case in that in each case the plaintiff did not make any demand for payment upon defendant until after it had dunned the freight forwarder for many months without success, thereby showing plaintiff’s initial understanding that defendant was not liable. In both cases plaintiff was perfectly willing to issue prepaid bills of lading and to take in exchange the freight forwarder’s due bills.
Under the circumstances, I find no liability on the part of the defendant in this case. “ This is not a situation where a third party’s obligation is taken for a pre-existing debt. Because of the contractual arrangement between plaintiff and the freight forwarder the debt here was the latter’s and not the defendant’s. The defendant made prompt payment to the freight forwarder and plaintiff may not, because of the afterthought which it has had, repudiate its credit arrangement with the freight forwarder and impose a double liability on defendant.” (Alcoa S. S. Co. v. Graver Tank & Mfg. Co., supra, p. 79.)
Judgment may be entered in favor of the defendant dismissing the complaint on the merits. Ten days’ stay of execution of judgment for costs, 30 days to make a case.