George M. Carney, J.
In this action, wherein the plaintiff shipping company (hereinafter “ torm ”) sues to recover $6,107.21, allegedly the unpaid balance due it for seven shipments of newsprint for defendant P. L. Thomas Paper Company Inc., which shipments were arranged between Thomas’ freight forwarder, defendant Tidewater Forwarding Co. Inc., and plaintiff’s agent Torm Lines Agency, Inc., all parties move for summary judgment.
The essential facts surrounding the shipments are undisputed. The shipments were agreed upon and properly made. The dispute centers around an alleged agreement by plaintiff’s agent’s former general traffic manager to grant either or both defendants a 10% discount off the tariff rate then fixed in the River Platte and Brazil Conference Tariff Schedules. The manner in which the discount was granted is rather complicated and need not be described at length herein. It should suffice to say that it- was effected through the use of bills of lading marked “Freight Prepaid” and exchanged for freight due bills, and the fact of the discount given is clear.
The primary dispute centers around the interpretation of the Shipping Act of 1916 (U. S. Code, tit. 46, §§ 801-842) and pertinent judicial decisions thereunder. Plaintiff argues that the discount granted was in derogation of the tariff set by the Conference to which plaintiff belonged. If this is true, plaintiff asserts that “ the carrier [may] withhold the goods for the difference in rates, regardless of any agreement to ship for less than those established [citing cases] * * *; but it may also recover the difference from the shipper or consignee, as the case may be, after it has delivered the goods [citing cases] ” (Prince Line v. American Paper Exports, 55 F. 2d 1053, 1055-1056 [2d Cir. 1932]). If this reasoning was controlling, plaintiff’s consent to the 10% discount would be immaterial, and defendants’ argument, based upon this point, of no consequence. The sole question then remaining for determination would be whether the freight rate reduction given was improper, under the Conference agreement, and whether both defendants or either one are liable to plaintiff. Defendant Thomas, in addition to arguing that it is not liable in any event, for no prior demand for payment was made upon it (on which issue a question of fact is present) and that it acted, in the negotiations, as agent for *300 a disclosed principal, further argues that the rate reduction was not contrary to the Conference agreement, and thus the Prince Line ease would be inapplicable and no recovery would be allowable, for the facts would then disclose merely an agreement to charge a price, which price was paid. If the latter point, concerning the applicability of the Conference rates was adopted, another issue would be raised concerning the authority of Smith to agree to a lower rate. In any event, the question just posed is the effect of the Conference agreement and of any agreement between a carrier and shipper to charge lower rates.
The shipments herein concerned were made in 1958. The applicable statute then in effect was section 815 of the Shipping Act of 1916 which, by its terms, proscribed the making or giving of ‘ ‘ any undue or unreasonable preference or advantage to any particular person, * * * in any respect whatsoever ” and allowing “ any person to obtain transportation for property at less than the regular rates or charges then established and enforced on the line of such carrier by means of false billing * * * or by any other unjust or unfair device or means.” (U. S. Code, tit. 46, § 815, subds. “First” and “Second”.) The pertinent regulation, promulgated by the Federal Maritime Board under the statute, and in force at the time of the shipments herein, required all common carriers, such as plaintiff, to file with the board, rate schedules adopted, and further provided that “ Any schedule required to be filed as aforesaid, and any change, modification or cancellation of any rate, charge, rule or regulation contained in any such schedule shall be filed as aforesaid within 30 days from the date such schedule, charge, modification or cancellation becomes effective. ’ ’ (General Order 83, § 235.2; emphasis added.) Assuming, as is conceded, that Conference rates established, become, after filing “ a tariff for the regulation of freights, for some purposes having the force of law” (Prince Line v. American Paper Exports, supra), the question still remains, first, whether the Conference rates, as filed, under the above-quoted regulation, precluded granting of any modifications, unless notice of the change was filed within 30 days thereafter, or whether, regardless of such filing, secret modifications were proscribed. Defendant Thomas argues that the regulation did not render unlawful the charging of rates lower than those fixed by the Conference, but only required subsequent filing of the change, for informational purposes only, and that the penalty if any, for failure to so file would be imposed against the carrier only. See Empire State Highway Transp. System v. Federal Mar. Bd. (291 F. 2d 336, [D. C. Cir.], cert. den. 368 U. S. 931), wherein the court stated (p. 340, *301 n. 10) that1 ‘ The established practice of filing rate tariffs agreed to under conference procedures for information, is not to be confused with filing for prior approval.” See, also, Docket No. 877, Filing of Freight in the Foreign Commerce of the U. S. (6 F. M. B. 396 [1961]) wherein the board, when considering a change in rules on this topic, stated that ‘ ‘ Under the existing regulation [6.0.83], which requires filing within 30 days after a change in freight rates, shippers would be charged varying rates which would not appear in a reported tariff as long as the rate was reported later, because the regular rate or charge established and enforced by a carrier, would always be the rates actually charged to a shipper instead of the one in the printed tariff. The tariffs reported to the Board only reflected past charges ”. (See, also, 25 Tulane L. Rev., Steamship Tariffs in Foreign Commerce, pp. 144-150.) However, though the deviation from the rate, alone, would not appear, under the above-noted regulation, improper, it does seem clear that when the reduction was effected through “ false billing ” or “ other unjust or unfair device or means ”, as proscribed by section 815 (subd. “ Second ”, supra), it would be prohibited if it resulted in an “ undue or unreasonable preference or advantage ” to the shipper, as proscribed by subdivision “ First” of that section. This is the impact of the Prince Line case (supra) and of Belmont Iron Works v. Pacific Coast Direct Line (249 App. Div. 156, 158, affd. without opn. 275 N. Y. 461, cert. den. 302 U. S. 747) wherein the court stated, while citing the Prince Line case, that “ It is, therefore, argued that the defendant [carrier] could charge as low a rate as it pleased without violating any statute, even though in so doing it should violate its contract with other lines. Assuming this to be true where the same rate is applied to all, it ceases to be true if a particular shipper, whether by inadvertence or design, is accorded an advantage which is not available to others, in violation of the definite provisions of the Shipping Act against unjust discrimination. * * * Those provisions are violated if the plaintiff may pay a lower rate on its consignment * * * than the conference rate which is applied to identical consignments by others.” (Accord Ambler v. Bloedel Donovan Lbr. Mills, 68 F. 2d 268 [9th Cir.]; Hohenberg Bros. Co. v. Federal Mar. Comm., 316 F. 2d 381, 385 [D. C. Cir.].) The facts adduced, and the very testimony of defendant Thomas’ president indicate clearly, that the discount was covered by false billing at the established rate; payment of the amount billed less than 10% discount and the issuance of a paid bill based thereon. No evidence has been adduced of a similar discount given to other shippers. Accord *302 ingly, under the decisions and statutes above cited, it is clear that an improper preference was given defendants, in a manner proscribed by the statute. Therefore plaintiff is entitled to recover the amount of the reduction given.
The question remaining is whether both defendants are liable therefor, or only one, and if so, which one. The general rule, the application of which is urged in the instant case by defendant Tidewater, is that an agent for a disclosed principal is not itself liable under a contract between a third party and his principal “ unless there is clear and explicit evidence of the agent’s intention to substitute or superadd his personal liability for, or to, that of his principal [citing cases] ” (Mencher v. Weiss, 306 N. Y. 1, 4).
The facts demonstrate that Tidewater was billed for the shipment and the bill of lading was issued to it as was the due bill of lading issued, for the due bill acted as a credit from the carrier to the shipper. Accordingly, it appears that Tidewater is liable (see Alcoa S. S. Co. v. Graver Tank & Mfg. Co., 124 N. Y. S. 2d 77; Hellenic Lines v. Alexander Pach, Inc., 20 Misc 2d 170). While plaintiff relied upon the freight forwarder’s credit, the liability of Thomas is founded upon the statute, and it too, is liable. The evidence indicates beyond doubt that it knew of and obtained the benefits of the discount. Therefore, plaintiff’s motion is granted and the cross motion by defendants for summary judgment denied. The award shall include interest from the date this action was commenced.