381 F.2d 546
 BARTLETT-COLLINS COMPANY, a Corporation, Appellant,
v.
SURINAM NAVIGATION COMPANY, a Corporation, Appellee.
BARTLETT-COLLINS INTERNATIONAL, C. A., a Corporation, Appellant,
v.
SOUTH AFRICAN MARINE CORPORATION, Ltd., a Corporation, Appellee.
BARTLETT-COLLINS INTERNATIONAL, C. A., a Corporation, Appellant,
v.
SURINAM NAVIGATION COMPANY, a Corporation, Appellee.
 Nos. 8681-8683.
 United States Court of Appeals Tenth Circuit.
 February 20, 1967.
 Rehearing Denied March 24, 1967.
 
 Sam T. Allen, III, Sapulpa, Okl., for appellants.
 Clarence A. Warren, Tulsa, Okl., for appellees.
 Before MURRAH, Chief Judge, and HILL and HICKEY, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 The appellee ocean carriers brought these actions in admiralty to recover the freight charges on goods shipped by appellants Bartlett-Collins Co. (hereinafter BC) and Bartlett-Collins International, C.A. (hereinafter BCI). At pretrial, the court suggested referral of the cases to a Special Master, and the parties subsequently agreed. The Master heard evidence and made findings and conclusions. The court also made findings and conclusions which were based upon and specifically "approved and confirmed" the report of the Special Master. The court prefaced his findings by stating in each case that "* * * there is no dispute as to the facts in this case and * * * all evidence necessary to sustain a judgment in favor of the plaintiff is either undisputed, uncontradicted or agreed to. The Court, therefore, finds that there is no issue to be submitted to a jury * *, and that plaintiff is entitled to judgment * * *." We affirm.
 
 
 2
 The goods in question were shipped through the port of New Orleans. A freight forwarder acted on behalf of BC and BCI to make the necessary shipping arrangements with Hansen and Tidemann, Inc. (hereinafter H & T), the shore agent of the carriers. The procedure was substantially as follows. After booking space on the appropriate ship, the forwarder prepared bills of lading for the goods and submitted them to H & T. H & T signed and returned them in exchange for the forwarder's three day due bills in the amount of the freight. The bills of lading were nevertheless marked "Freight Prepaid". The bills of lading were then sent to the appellant shippers along with the forwarder's invoice for the freight costs, incidental expenses, and its forwarding fee. In the usual case[1] the shippers paid the forwarder, the forwarder honored its due bills, and everyone was happy. But not in this case. Although BC and BCI paid the invoice amounts to the forwarder, the due bills were not paid on time. Indeed, despite repeated demands by H & T, the forwarder never did pay the due bills, and eventually became unable to do so.[2] It is undisputed that the forwarder was solvent during the first three or four weeks after its bills became due, and that the first notice to the shippers of dishonor of the due bills and demand for payment from the shippers did not occur until some three months after the bills became due.
 
 
 3
 We are first concerned with in personam jurisdiction over BCI. BCI is licensed to do business in Oklahoma, and process was served on its registered service agent. The contention is that BC (a Delaware corporation) and BCI (a Venezuelan corporation) are separate entities and that the glass manufacturing plant at Sapulpa, Oklahoma, is operated solely by BC and not, as the court found, by BC and BCI. BCI is said to be a mere exporter not doing business in Oklahoma and not amenable to suit there. We consider this matter only in No. 8682[3] since no defense of lack of personal jurisdiction was raised in No. 8683.
 
 
 4
 An admiralty action may be brought against a foreign corporation in any United States District Court which can obtain personal jurisdiction over that corporation. See Pardonnet v. Flying Tiger Line, Inc., D.C., 233 F.Supp. 683; see also McKee v. Brunswick Corp., 7 Cir., 354 F.2d 577; Gkiafis v. Steamship Yiosonas, 4 Cir., 342 F.2d 546. Without deciding whether BC and BCI were jointly engaged in the manufacture of glass at Sapulpa, we think the court clearly had personal jurisdiction over BCI. Being licensed to do business in Oklahoma it was thus a domesticated corporation within the meaning of 18 Okl.St.Ann. § 1.2(4). As such, it was entitled to the same rights and privileges and subject to the same duties as a domestic corporation, 18 Okl.St.Ann. § 1.199(d), including amenability to suit. But, moreover, BCI's Vice President testified that when these shipments were made, it maintained an "expediter" office at Sapulpa, staffed by two employees. Thus, even if BCI were not domesticated within the meaning of the Oklahoma Act and had no registered service agent, it was doing business within the meaning of 18 Okl.St.Ann. § 1.204a, as amended, and therefore was subject to substituted service. See Walker v. General Features Corp., 10 Cir., 319 F.2d 583; Walker v. Field Enterprises, Inc., 10 Cir., 332 F.2d 632.
 
 
 5
 On the merits the main contention is that the carriers are estopped from recovery by the conduct of their agent, H & T. It is argued that BC and BCI paid the forwarder, and that H & T is responsible for the carriers not being paid. The shippers point out that they did not know the bills of lading were issued in exchange for due bills or that such was the longstanding custom in the port of New Orleans;[4] that as the Master found, the shippers did not authorize payment via the due bill procedure; that the bills of lading were marked "Freight Prepaid"; and that by not notifying the shippers for three months that the due bills had been dishonored, H & T prevented the shippers from taking recourse against the forwarder while it was still solvent. It is further asserted that issuing, "Prepaid" bills of lading for due bills is in violation of 49 U.S.C. § 918, and even "smacked of fraud". In support of their position the shippers cite Alcoa S. S. Co. v. Graver Tank and Mfg. Co., City Ct., 124 N.Y.S.2d 77, and Hellenic Lines Limited v. Alexander Pach, Inc., 20 Misc.2d 170, 192 N.Y.S.2d 660. The trial court held that the shippers contracted for the carriage of their goods, and that under the principle of Empire Petroleum Co. v. Sinclair Pipeline Co., 10 Cir., 282 F.2d 913, the carriers must be paid no matter how inequitable the conduct of the carriers or their agent.
 
 
 6
 The rule followed by the trial court is too well established to admit of doubt. It has been followed in the case of pipelines, railroads, motor carriers and airlines. See Empire Petroleum Co. v. Sinclair Pipeline Co., supra; Atchison, Topeka and Santa Fe Ry. Co. v. Bouziden, 10 Cir., 307 F.2d 230; T & M Transp. Co. v. S. W. Shattuck Chemical Co., 10 Cir., 158 F.2d 909; United States v. Associated Air Transport, Inc., 5 Cir., 275 F.2d 827; Cf. Alcoa S. S. Co., Inc. v. Comfort Spring Corp., D.C., 170 F.Supp. 548. Its application to foreign shipping was clearly indicated on facts nearly identical to these in Compania Anonima Venezolana De Nav. v. A. J. Perez Exp. Co., 5 Cir., 303 F.2d 692. As Judge Brown concisely stated:
 
 
 7
 "If it is a suit by the Carrier, we can assume that by virtue of its filed tariffs expressly incorporating its bill of lading contract, conduct by the Carrier — no matter how inequitable — cannot excuse it from enforcing collection of freight, nor can harm innocently suffered by the Shipper — occasioned by the wrongdoing of another (the Agent) — excuse it from paying the Carrier even though this means payment twice. That would follow from the rigorous policy which, to prohibit not only discrimination but the possibility of it, gives to carrier tariffs the force of law." Footnotes omitted. Id. 695.
 
 
 8
 The court, however, did not apply the rule in that case, for it found that although the suit was brought in the name of the carrier, the real party in interest was the carrier's agent who was seeking subrogation to the rights of the carrier. To seek subrogation and to attain it were held to be two different matters, and subrogation being an equitable concept, the court felt that the equities were clearly with the shipper and denied recovery. But, in our case the carriers are clearly the real parties in interest, and the rule of law which requires that the carriers be paid is clearly applicable. We need not decide whether issuance of the bills of lading in exchange for due bills violated federal statutes. Even if it did, the policy of the law is to insure payment, and it is payment which the carriers seek to enforce here. Forfeiture of the freight is nowhere provided as a penalty for violation of 49 U.S.C. § 918.[5]
 
 
 9
 What has been said also disposes of the shipper's contention that interest should not have been awarded. See T & M Transp. Co. v. S. W. Shattuck Chemical Co., supra.
 
 
 10
 But, the shippers contend that even if the rule is that the carriers must be paid, they are not liable because the carriers have in fact been paid. The theory is that the forwarder was not only the agent of the shippers, but also of the carrier, and that payment to the forwarder was payment to the carriers. In support of this position the shippers again rely on the Graver Tank and Alexander Pach cases, supra. They also point to the fact, not previously mentioned, that H & T on behalf of the carriers authorized the payment of a brokerage fee to the forwarder. This is said to be strong evidence of agency.
 
 
 11
 The attorney for the carriers admitted on oral argument that if the forwarder was the agent of the carriers, he was in "deep trouble". The difficulty from the standpoint of the shippers is that at no point in the trial court proceedings was this issue raised or decided, nor was any objection made to the failure to decide it. The pleadings, pretrial, evidentiary hearing, Master's report and objections thereto, and the court's own findings and conclusions reveal no mention of the issue, despite the fact that the cases relied upon by the shippers here were clearly before the Master and persumably before the court.
 
 
 12
 On occasion a theory raising a question of law not in issue before the trial court will be considered on appeal in order to prevent a manifest injustice. But the existence of an agency is a question to be decided by the trier of the fact. See Appleby v. Kewanee Oil Co., 10 Cir., 279 F.2d 334; Steinbrugge v. Haddock, 10 Cir., 281 F.2d 871. As we have noted, the court found no issue requiring submission to a jury, and the shippers made no objection to this finding. To be sure the authorization of a brokerage fee is some evidence of the requisite right of control; but in itself it certainly does not establish that the forwarder was the carriers' agent as a matter of law, nor does it do so when considered in connection with the other established facts of this case. The agency question may not be raised for the first time on appeal. See List v. Fashion Park, 2 Cir., 340 F.2d 457.
 
 
 13
 One issue remains. The shippers contend that the court erroneously denied their motion for rehearing based on newly discovered evidence. The alleged evidence consisted of the schedule of unsecured creditors filed in the forwarder's Bankruptcy proceedings, and which listed H & T as a creditor of the forwarder. The argument is that this evidence was relevant to whether H & T paid the freight charges to the carriers. If so, it was the real party in interest and thus subject to the same equitable defenses raised against the carrier's agent in Compania Anonima Venezolana De Nav. v. A. J. Perez Exp. Co., supra. Of course, the court's disposition of the motion will not be disturbed on appeal except for manifest abuse of discretion.
 
 
 14
 One of the many requirements for granting a new trial on the basis of newly discovered evidence is that it be "* * * of such a character that on a new trial it will probably produce a different result." McCullough Tool Co. v. Well Surveys, Inc., 10 Cir., 343 F.2d 381, 410. The proffered evidence put forward here fails to meet this standard. The fact that the forwarder listed H & T as a creditor does not necessarily indicate that H & T has filed a claim, or that if it has, the claim represents the freight charges in suit here. At most, this would be some evidence on the real party in interest question. In itself it certainly does not indicate that a different result would be probable on new trial.
 
 
 15
 Finally, though the parties agreed to reference to a Master, we are constrained to suggest that there was no justification for such action. It is important to remember that reference to a Master "* * * shall be the exception and not the rule", i. e. see Rule 53(b) F.R. Civ.P. "Litigants are entitled to a trial by the court, in every suit, save where exceptional circumstances are shown." La Buy v. Howes Leather Co., Inc., et al., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, quoting from Adventures in Good Eating, Inc. v. Best Places to Eat, Inc., 7 Cir., 131 F.2d 809, 815. That the case involves complex issues of fact and law is no justification for reference to a Master, but rather is an impelling reason for a trial before an experienced judge. Id. 259, 77 S.Ct. 315. We expressly disapprove reference of cases of this kind.
 
 
 16
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 BC utilized the services of this forwarder for 17 years prior to the shipments in question. BCI did likewise after it came into existence in 1958
 
 
 [2]
 The forwarder was the subject of Bankruptcy proceedings while these cases were before the trial court
 
 
 [3]
 Prior to answering BCI, "appearing specially", filed a motion to dismiss for lack of in personam jurisdiction. The motion was denied
 
 
 [4]
 See Compania, etc. v. Mandry, D.C., 171 F.Supp. 290, which recognizes the existence of such a custom in New Orleans
 
 
 [5]
 49 U.S.C. § 918 provides in pertinent part that "No common carrier by water shall deliver or relinquish possession at destination of any freight transported by it until all tariff rates and charges thereon have been paid, * * *"