**Paul Wm. POLIN and Marsha Polin, Plaintiffs–Appellants,**

v.

**DUN & BRADSTREET, INC., Defendant–Appellee.**

**No. 78–1648.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 16, 1980.

Decided Dec. 3, 1980.

Charles A. Whitebook, Tulsa, Okl. (Don E. Gasaway, Fred Boss and David E. Kumpe, Tulsa, Okl., with him, on brief), for plaintiffs–appellants.

John Kinslow of Wade & Kinslow, Lawton, Okl. (Arthur E. Rubin of Gable, Gotwals, Rubin, Fox, Johnson & Baker, Tulsa, Okl., with him, on brief), for defendant–appellee.

Before, SETH, Chief Judge, and HOLLOWAY, McWILLIAMS, BARRETT, DOYLE, McKAY, LOGAN, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

This diversity action applying Oklahoma law was brought by Paul and Marsha Polin against Dun & Bradstreet, Inc. for damages resulting from alleged invasions of privacy. The trial court granted defendant's motion for summary judgment on the ground that the applicable statute of limitations barred the action. On appeal, we reversed and remanded for further proceedings. *Polin v. Dun & Bradstreet, Inc.*, 511 F.2d 875 (10th Cir. 1975).

After remand, the court ordered the cause referred to a special master to make final findings of fact, and to recommend conclusions of law and the judgment to be entered thereon. . Upon stipulation of the parties, the judge entered a later order enlarging the authority of the special master to conduct all further proceedings and stating that "judgment will be entered in the case by this Court as recommended by such Special Master." Rec., vol. IV, at 761. The special master handled pretrial matters and then entertained a motion for summary judgment. He granted summary judgment in .favor of defendant. On the same day, the district court entered judgment "[i]n conformity with the Order entered by [the] Special Master . . . ." Rec., vol. IV, at 868.

The Polins appealed. The issue of the propriety of the reference was not raised by the parties either before the district court or on appeal. However, a panel of this court exercised its supervisory power to order the case reversed and remanded with directions that the cause be heard and determined by a district judge. The panel held that the reference to a special master was improper under Fed.R.Civ.P. 53(b),[1] and that it amounted to an abdication of the judicial function. We granted rehearing en banc so the parties could brief and argue the validity of the reference.[2] Upon

---

1. Rule 53(b) provides:

   "A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that that some exceptional condition requires it."

   The panel found an absence of any reason in the record to support the reference under Rule 53(b).

2. On rehearing en banc, the Polins argued for the first time that the reference was improper and should be vacated.

rehearing, we hold that this case must be remanded for exercise by the district court of its responsibilities under Fed.R.Civ.P. 53(e)(4).[3]

Although this court has expressed disapproval of the reference to a special master when made outside the limitations of Rule 53(b), *see Wilver v. Fisher*, 387 F.2d 66 (10th Cir. 1967); *Bartlett–Collins Co. v. Surinam Navigation Co.*, 381 F.2d 546 (10th Cir. 1967), such a reference does not raise an issue of jurisdiction. *Cruz v. Hauck*, 515 F.2d 322, 327 (5th Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976); *Diamond Door Co. v. Lane–Stanton Lumber Co.*, 505 F.2d 1199, 1206 (9th Cir. 1974). At most it constitutes an abuse of discretion. *See La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) (parties objected to reference); *Wilver*, 387 F.2d at 69. We have not previously exercised our supervisory powers to vacate a reference under Rule 53(b) and reverse on that ground. *See Wilver*, 387 F.2d 66; *Bartlett–Collins*, 381 F.2d 546.

Here, however, we are faced with a more serious problem namely the district court's failure to review the legal conclusions in the special master's order. As noted above, the trial court entered judgment "in conformity with" the special master's order on the same day the master issued his order. Unlike the district court in *Bartlett–Collins* or *Wilver*, it is apparent that the judge here did not review the special master's report.

Failure of the district court to review and consider questions of law arising upon the special master's report violates Rule 53(e)(4). *Duryea v. Third Northwestern National Bank*, 602 F.2d 809, 810 (8th Cir. 1979); *De Costa v. Columbia Broad-*

casting System, Inc., 520 F.2d 499, 508–09 (1st Cir. 1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). District court scrutiny is essential for several reasons:

> "[S]uch review permits correction of possible error at the earliest time. Thus, an improper verdict may be detected and corrected before appeal. Similarly an erroneous charge to the jury or an incorrect ruling of law by the magistrate or master can be rectified by ordering a new trial. Finally, not only will review at the district court level often save parties the expense and difficulty of appeal, but it will also give the appellate court the benefit of the district court's reasoned consideration."

*Sick v. City of Buffalo*, 574 F.2d 689, 693 (2d Cir. 1978) (footnotes omitted).

This case is remanded to the district court for review of the special master's report in accordance with Rule 53(e)(4).[4] The decision whether summary judgment was proper should be made in the first instance by the trial judge after he has reviewed the legal conclusions reached by the special master.

WILLIAM E. DOYLE, Circuit Judge, dissenting.

I respectfully dissent.

I do so not only for the reason that I originally wrote the opinion when the matter was presented to a panel of this court, and that opinion condemned the proceedings in the trial court. An additional reason is the fact that the majority of the Judges acting for the court en banc have subscribed to an opinion which is in conflict

---

3. Rule 53(e)(4) provides:

> "*Stipulation as to Findings.* The effect of a master's report is the same whether or not the parties have consented to the reference; but, *when the parties stipulate that a master's findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered.*"

(Emphasis added).

4. A new avenue available to the court and to parties to avoid the limitations of Rule 53(e)(4)

is found in the broad scope of the United States Magistrate's Act, 28 U.S.C.A. §§ 631 *et seq.* (1979). With the consent of the parties, a designated United States magistrate may conduct any proceedings in a jury or nonjury civil matter and order entry of judgment in the case. *Id.* § 636(c)(1). The aggrieved party may appeal directly to the appropriate court of appeals without prior review by the district court. *Id.* § 636(c)(3).

with not only Rule 53 of the Federal Rules of Civil Procedure, which deals with the appointment and the functioning of special masters, but is contrary as well to the Supreme Court's decision in *La Buy v. Howes Leather Company*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1967), and is out of harmony with two decisions of this circuit, *Wilver v. Fisher*, 387 F.2d 66 (10th Cir. 1967), and *Bartlett–Collins Company v. Surinam Navigation Company*, 381 F.2d 546 (10th Cir. 1967).

It is of interest and important to set forth here the reference to the special master. It provided as follows:

... to take and hear the evidence offered by the respective parties and to make his Findings of Fact, which Findings shall be final (except for an appeal, if any, to the United States Court of Appeals, Tenth Circuit); and to recommend Conclusions of Law on all issues presented and recommend the Judgment to be entered thereon to this Court. It is further ordered that the Special Master is authorized and empowered to do all things and to make such Orders as may be required to accomplish a full hearing on all matters of fact and law in issues in this case.

Not only did the trial court in this reference authorize the special master to make findings of fact which were to be final except for appeal to this court, but it also authorized the recommendation of conclusions of law on all issues presented. The master was also authorized to recommend the judgment which was to be entered thereon. This was followed by a general authorization to make all orders and conduct the full hearing on all matters of fact and law in the case. This, however, was not all. Two months later, on May 18, 1977, an order was entered which greatly enlarged the authority of the special master. This further grant of authority not only allowed the master to recommend a judgment following a jury trial, it committed the court to entering a judgment in conformity with that very recommendation. The outstanding terms of this supplemental grant of authority are as follows:

It is therefore ordered that the Special Master be authorized to conduct all proceedings and make all orders deemed by him to be necessary in preparing for and presiding over the trial of this cause, and that judgment will be entered in the case by this Court as recommended by such Special Master, all in accordance with the agreement and recommendation of counsel for the parties.

A motion for summary judgment was filed after a pretrial conference was held before the master on April 3, 1978. The next step was for the special master to grant the motion for summary judgment. This order of the master was confirmed on the same date by the trial court.

Rule 53(b) provides that a reference to a master shall be the exception and not the rule, and that actions calling for a jury trial should be referred only when the issues are complicated. The rule goes on to provide that actions to be tried without a jury, save in matters of account and of difficult computation of damages, shall be referred only upon a showing that some exceptional condition requires it.

There is no dearth of authority in the area before the court. The most important of the many decisions which have been rendered is that of the Supreme Court in *La Buy v. Howes Leather Co., Inc.*, supra. In the *La Buy* case the trial judge was faced with the trial of a troublesome anti–trust action; it was not only complex, it was lengthy. The estimate was that it would require six weeks. Judge La Buy had prepared the case for trial and had devoted a great deal of time and effort to it. Despite this, he did not take it to trial. Instead, he ordered an appointment of a special master to hear it. The parties then filed a mandamus in the Court of Appeals, Seventh Circuit. That court ruled that the references had to be vacated and issued a writ of mandamus so directing. It was argued on behalf of La Buy in the Supreme Court that the Court of Appeals lacked the power to issue a mandamus in the circumstances presented. The Supreme Court disagreed with that position, and ruled that the case

did not satisfy the requirements of Rule 53(b), and that it was contrary to that rule. The Supreme Court said that congestion of the docket was not an exceptional circumstance under Rule 53(b). The Court said also that the complexity of the case did not justify the appointment of a master. Rather, it was said by the Court that this fact was a compelling reason for trying the case before an experienced trial judge, rather than a temporary substitute "appointed on an ad hoc basis and ordinarily not experienced in judicial work." The Supreme Court acknowledged that the need for a detailed accounting would have authorized the reference to a master. The Supreme Court's conclusion was that the action of the district court in this case was an abdication of the court's function, and constituted an abuse of power. After pointing out that the reference was an abuse of the trial judge's power under Rule 53(b), the Supreme Court went on to speak generally on the use of masters. It said:

> Under all circumstances, we believe the court of appeals was justified in finding the orders of reference were an abuse of the petitioner's power under Rule 53(b). They amount to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation.

A good deal of the majority opinion is concerned with the use of the writ of mandamus to correct the condition. Four Justices dissented, Mr. Justice Brennan, Mr. Justice Frankfurter, Mr. Justice Burton and Mr. Justice Harlan. But they did not dissent on the issue of violation of Rule 53(b); rather they dissented solely on the propriety of bringing the action before the Supreme Court on mandamus. The use of the writ was considered to constitute a piecemeal appeal. The dissenting opinion written by Mr. Justice Brennan said that the sole question was whether "review should have awaited final decision in the cause or whether the order was reviewable before final decision by way of petition under the All Writs Act ...". We, of course, do not have the question of propriety of attacking this problem by extraordinary writ. Justice Brennan's dissent did not question the power of the Seventh Circuit Court of Appeals to correct any error in Judge La Buy's reference. The last paragraph of the dissent emphasizes that the review is governed by § 1291 of the Judicial Code.

This court, in *Bartlett–Collins Company v. Surinam Navigation Company*, supra, considered a fact situation similar to that presented in the case at bar. There, as here, the parties had agreed to have a reference to a master. This court, through Chief Judge Marrah said:

> Finally, though the parties agreed to reference to a master, we are constrained to suggest that there was no justification for such action. It is important to remember that reference to a master ' * * * shall be the exception and not the rule', i. e. see Rule 53(b) F.R.Civ.P. 'Litigants are entitled to a trial by the court in every suit, save where exceptional circumstances are shown.' *La Buy v. Howes Leather Co., Inc., et al.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, quoting from *Adventures in Good Eating, Inc. v. Best Places to Eat, Inc.*, 7 Cir., 131 F.2d 809, 815. That the case involves complex issues of fact and law is no justification for reference to a Master, but rather is an impelling reason for a trial before an experienced judge. Id. [352 U.S.] 259, 77 S.Ct. 315. We expressly disapprove reference of cases of this kind.
>
> Page 550, Id.

In that case the master heard evidence and made findings and conclusions but the court also made findings and conclusions based upon and specifically approving the report of the special master.

In *Wilver v. Fisher*, supra, this court also disapproved the reference to a master as being contrary to Rule 53(b). This was a stockholders derivative suit, which charged the president of the company with violating his fiduciary duty by dealing on his own behalf. A master was appointed for the purpose of obtaining the answers to interrogatories during the discovery procedures. The master conducted numerous hearings

and filed a report recommending that a motion for default be overruled. The master recommended also that if the court upheld the master's rulings on the sufficiency of the excuse given and if the defendant did not give complete answers, judgment by default should be entered. No party objected to the master's report or asked the court to approve it. The court nevertheless approved the report and granted the motions for default and entered judgment directing an accounting and granting other relief. This court held that the reference to the master was not justified and noted that the trial court had not made findings except in the instance of exceptional circumstances. It noted further that the order of reference referred to delay on the part of the defendants, the complexity of the problems and in serving the best interests of justice. The court, in an opinion of Judge Breitenstein said:

> None of these amount to an exceptional circumstance. A trial judge must exercise discretion in the determination of an exceptional circumstance, and that discretion is reviewable by the court of appeals.

The court then went on to rule that it was not appropriate to appoint a master for the purpose of supervising discovery; that the responsibility for this was in the trial court. If it is improper to allow a master to conduct discovery, it is plainly erroneous to approve the grant by a master of summary judgment.

> The courts have the duty and responsibility to try and dispose of the lawsuits brought before them. The law favors the disposition of litigation on its merits. The Rules of Civil Procedure provide orderly means for the attainment of this result. They should be followed and not ignored.

It is clear from this court's decision in *Bartlett–Collins* and in *Wilver* that there is in the Tenth Circuit a commitment to strict enforcement of Rule 53(b). And the present case is a flagrant violation of Rule 53(b).

The essence of the ruling in the district court here is that even though the proceedings before the master may have been improper because of the failure of the court to review the special master's order, the problem is corrected by allowing the successor district judge to, now on remand, review the master's report. I maintain that this is not only contrary to Rule 53, but contrary to the Supreme Court's decision in *La Buy* and our decisions in the cited cases, whereby we cannot validly give a stamp of approval to the reference to the master in the district court. The original order of reference and the supplemental one are both grossly excessive in their terms. The flagrant nature of the violation fully justifies our noticing and condemning it. The problem is not solved nor is the violation corrected by remand to the district court directing the present judge to carry out a review.

The opinion cites the Magistrates Act and states that it is a new avenue to avoid the limitations of Rule 53(e)(4). This is the Magistrate's Act, 28 U.S.C. 631, et seq. This may be good legal advice, but it does not justify what occurred in this case.

Finally, the efforts to distinguish *La Buy*, *Wilver* and *Bartlett–Collins* are wholly inadequate. The fact that the parties objected in *La Buy* is pointed out. *Wilver* and *Bartlett–Collins* are cited but those rulings are ignored with the statement, "we have not previously exercised our supervisory powers to vacate a reference under Rule 53(b), and reverse on that ground." The opinion does not mention that the reference was consented to in both *Wilver* and *Bartlett–Collins* and this court did not consider that to be a basis for distinguishing *La Buy* and Rule 53(b). Moreover, the use of supervisory power does not justify the disregard of highly relevant authorities.

In summary on this matter of violation of Rule 53, it is submitted that the rule sets the outer limits for use of a master, and does so in aid of Article III of the Constitution.

Rule 53(c) authorizes the master, if it is a proper case for reference, to require the production of evidence. It allows him to rule on admissibility of evidence unless oth-

erwise ordered by the order of reference and allows him to put witnesses under oath and to examine them. He may also call the parties to the action and examine them.

Rule 53(e)(4) provides that when the parties stipulate that the master's findings of fact shall be final only questions of law arising upon the report shall thereafter be considered.

It is significant that the rule goes into detail concerning the master's powers and the conditions under which they are brought into examination. There is no suggestion, express or implied, in any of these sections of Rule 53 which would allow the master to have the power to decide a case on its merits and enter judgment, as he was empowered to do in this reference. Nor is a master allowed to hear a motion for summary judgment and render a judgment based upon his determination as was done here.

The majority opinion suggests that if the parties agree to the appointment of a master that they are thereby waiving the rule and, indeed, waiving Article III, as well, although this latter is not mentioned. But if this concept is carried to the furthest possible point, Article III, and Rule 53 as well, are reduced to mere guidelines. Consent would remove all limits to the powers of the master. If one thinks about this a little bit, it becomes obvious that the references, the first one and the second one, which constituted full and complete abdication of judicial powers, were beyond any reasonable boundary, waiver or no waiver. They are palpably wrong and invalid. I am not saying that the result of the majority decision would be that in the future counsel could consent to the master exercising the judicial power of the United States as defined in Article III. Such a result is not fostered in the majority decision, but at the same time the decision does not limit or prohibit that result.

In general, the litigant has the right to have his case heard and determined by Article III courts. The exceptions to this are discussed in an article entitled "Masters and Magistrates in the Federal Courts," 88 Har-

vard Law Review, 779, 783. The author recognizes the constitutional right to a hearing in an Article III court just mentioned, and goes on to state that the only exceptions under which other categories of constitutional grants permit judicial functions are these: The first group includes territorial and local District of Columbia courts. Article I, Section 8 comes into play here. The second exception involves matters which historically were not recognized in the common law as inherently judicial. The third group relates to specific, special matter areas, such as taxation or military discipline, where it is essential to the exercise of vital constitutional responsibilities that the branch of government exercise judicial functions.

Chief Justice Marshall, the article states, considered the first of these exceptions, which is the only one that comes close to our problem, in *American Insurance Co. v. 356 Bales of Cotton*, 26 U.S. 511, Pet. 1, 7 L.Ed. 242 (1828). Justice Marshall was considering the question whether the Florida territorial court could exercise admiralty jurisdiction assuming that Congress had vested such jurisdiction in that court. Justice Marshall said that the Florida courts in question were not constitutional courts in which the judicial power could be deposited because they are incapable of receiving the power. He went on to say that the Florida courts are legislative courts and that the jurisdiction they exercise was conferred by Congress as a part of its power to govern territories of the United States. This decision suggests that only Congress may create a tribunal capable of exercising non–Article III power, not the courts. In fact, the magistrates are examples of Article I courts created by Congress. Clearly the magistrates are not to be confused with masters.

The author of the Harvard Law Review article cited above discusses this general problem in its conclusion. The author states that masters should be used only to perform essentially mechanical functions or to resolve issues so esoteric as to be outside the range of ordinary judicial competence. The author also reaches the conclusion that

inherent in several provisions of Rule 53 are limitations and restraints. This adds up to the conclusion that whether this court is exercising supervisory authority or is conducting a review, neither the Constitution nor Rule 53 allow the master to perform functions such as were attempted here, and this court should say so.[1]

I am authorized to say that Judges Holloway and McWilliams join in the foregoing dissenting opinion.

---

1. The full text of this conclusion is as follows:

IV. Conclusion

There does not appear to be any significant constitutional obstacle to using parajudges in the federal system, and implementation of the Magistrates Act has alleviated many of the problems previously associated with the use of special masters. Nevertheless, sound policy considerations, recognized in rule 53(b) and in the Magistrates Act, continue to dictate some restraints on reference practice. Masters should be used only to perform essentially mechanical functions or to resolve issues so esoteric as to be outside the range of ordinary judicial competence. Where magistrates are assigned essentially administrative tasks, or where meaningful judicial supervision is assured, they may make a valuable contribution to streamlining the judicial process. However, maintaining the integrity of that process requires that magistrates not be allowed to supplant judges commissioned under the Constitution in the ultimate adjudication of controversies.