Fred MARVEL and Angela Marvel, dba Marvel Photo, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 75–1825.

United States Court of Appeals, Tenth Circuit.

Submitted Sept. 21, 1976.

Decided Jan. 13, 1977.

James L. Edgar and Stephen A. Milligan of Edgar, Manipella & Hinds, Tulsa, Okl., for appellants.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Crombie J. D. Garrett, Francis J. Gould, Attys., Dept. of Justice, Washington, D.C., and Nathan G. Graham, U. S. Atty., Tulsa, Okl., of counsel, for appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

LEWIS, Chief Judge.

Appellants Fred and Angela Marvel (taxpayers) seek review of a district court order denying their motion for a temporary restraining order and preliminary injunction enjoining the Internal Revenue Service (IRS) from levying on taxpayers' assets during the pendency of their suit for refund and abatement of allegedly unpaid FICA, federal withholding, and federal unemployment taxes. The issue presented is whether the relief sought is barred by the Anti Injunction Act, 26 U.S.C. § 7421(a).

I

Taxpayers, doing business as Marvel Photo, operate a general photographic studio in Tulsa, Oklahoma. On February 5, 1974, the IRS issued a notice of assessment to Marvel Photo for unpaid FICA, federal withholding, and federal unemployment taxes for the period of January 1, 1966 through December 31, 1971. On November 1, 1974, the IRS issued a series of "Final Notices Before Seizure" stating that within ten days, and without further notice, any bank accounts, receivables, commissions, or other income or property belonging to taxpayers would be levied upon or seized. On November 6, 1974, taxpayers paid the employment taxes of one alleged employee for each of the periods in question. On November 8, 1974, a claim for refund of this partial payment was filed with the IRS.

On May 29, 1975, a period of six months having elapsed without a determination of their refund claim by the IRS, taxpayers filed suit in federal district court for refund of the taxes paid and abatement of the remainder of the assessments. In conjunction with this suit taxpayers moved for a temporary restraining order and preliminary injunction enjoining the IRS from levying on taxpayers' assets during the pendency of the litigation. The district court, finding its jurisdiction to grant injunctive relief curtailed by the Anti Injunction Act, 26 U.S.C. § 7421(a), denied the motion.

## II

■ The issue presented ·is one of first impression and requires us to construe the provisions of the Anti Injunction Act, 26 U.S.C. § 7421(a):

Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person

. . . .

Despite the seemingly absolute language of the statute, it has enjoyed a long and variable history of judicial construction ranging from strict enforcement to equation with the ordinary judicial standard for equitable relief. *Cf. "State Railroad Tax Cases,"* 92 U.S. 575, 23 L.Ed. 663, *with Miller v. Standard Nut Margarine Co.,* 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. The most recent pronouncements by the Supreme Court on this subject, however, must be read as putting an end to this cyclical pattern of construction.

But the Court's unanimous opinion in *Williams Packing [Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292] indicates that the case was meant to be the capstone to judicial construction of the [Anti Injunction] Act. It spells an end to a cyclical pattern of allegiance to the plain meaning of the Act, followed by periods of uncertainty caused by a judicial departure from that meaning, and followed in turn by the Court's rediscovery of the Act's purpose.

*Bob Jones University v. Simon,* 416 U.S. 725, 742, 94 S.Ct. 2038, 2048, 40 L.Ed.2d 496. Thus, "the Court in its most recent reading [*Williams Packing, supra*] gave the Act almost literal effect," subject only to a narrowly construed exception. *Id.* at 737, 94 S.Ct. at 2046. The parties agree that in order to invoke this judicial exception the taxpayer must clearly demonstrate "that under no circumstances could the Government ultimately prevail" and that "equity jurisdiction otherwise exists." (See discussion in part III, infra.) *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292.

Notwithstanding the literal wording of the statute and the strict construction adopted by the Supreme Court, taxpayers correctly note that the Supreme Court has never ruled directly on the availability of injunctive relief in suits for refund and that all of the reported decisions have involved suits for injunctive relief *prior* to any payment of the assessed tax. This absence of authority is primarily attributable to the bifurcated nature of the tax litigation system devised by Congress. In the great majority of tax cases the taxpayer has the option of paying the assessment in full and suing for a refund in district court or of litigating the assessment in the Tax Court prior to payment. In either case injunctive relief from seizure by the IRS during the pendency of the proceedings is unnecessary because the assessment has been paid in full or because seizure is ordinarily barred by statute during litigation in the Tax Court, 26 U.S.C. § 6213(a).

■ In cases such as the present involving employment or excise taxes, the Tax Court is without jurisdiction and ordinarily the only remedy available to the taxpayer would be full payment of the assessment followed by a suit for refund in district court. In *Flora v. United States,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623, however, the Supreme Court noted that excise taxes are divisible per transaction or event with the result that the jurisdiction of the

district courts may be invoked by payment of the assessed taxes for any *one* transaction or event without payment of the full assessment. *Id.* at 175 n.38, 80 S.Ct. 630. This "partial payment" rule has been interpreted by the lower federal courts to include other assessments of "divisible" taxes, including employment and social security taxes, and the IRS has acquiesced in this interpretation. *Steele v. United States,* 8 Cir., 280 F.2d 89, 90–91. Thus only in this exceptional class of "partial payment" refund suits is there a possibility of IRS seizure during the pendency of district court refund proceedings.

The essence of taxpayers' arguments in support of injunctive relief from seizure during these "partial payment" refund suits is that without such relief this recognized exception to the full payment rule is rendered meaningless since the IRS could unilaterally require "full payment" at any time by levying on taxpayers' assets.[1] Such action would not only "deprive" taxpayers of their "only available remedy," it being stipulated that they are unable to pay the full amount of the assessment without irreparable injury to their business, but would do nothing to further the purposes of the Act.

Although the Act has essentially no legislative history,

> The Court has interpreted the principal purpose of [the Act] to be the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of *preenforcement* judicial interference, "and to require that the legal right to the disputed sums *be determined in a suit for refund.*" *Enochs v. Williams Packing & Navigation Co.,* su-

pra, 370 U.S. at 7, 82 S.Ct. [1125] at 1129.

. . .

*Bob Jones University, supra,* 416 U.S. at 736–37, 94 S.Ct. at 2046 (emphasis added) (citations omitted). Similarly, the Supreme Court has identified a "collateral objective" of the Act as "protection of the collector from litigation *pending a suit for refund.*" *Williams Packing, supra,* 370 U.S. at 7–8, 82 S.Ct. at 1129 (emphasis added). Since their motion for injunctive relief was made only *after* a suit for refund had been filed, taxpayers maintain they have complied with the congressionally prescribed procedure for determining "the legal right to the disputed sums" and that both the principal and the collateral purposes of the Act have been satisfied.

Taxpayers seek support for this contention in two statements by the Supreme Court that the range of remedies available in refund suits has not been determined. In Bob Jones, *supra,* the Supreme Court denied petitioner's suit for injunctive relief enjoining the IRS from withdrawing its 501(c)(3) status as a tax-exempt organization prior to collection or payment of the tax, but noted:

> Petitioner did not bring this case as a refund action. Accordingly, we have no occasion to decide whether the Service is correct in asserting that a district court may not issue an injunction in such a suit, but is restricted in any tax case to the issuance of money judgments against the United States. . . . We note, however, that the Service's position with regard to the range of relief available in a refund suit raises several considerations not presented by a pre-enforcement suit

---

1. The IRS, of course, insists there is little likelihood of such a unilateral seizure absent circumstances jeopardizing the availability of the revenue after judgment.

    In practice, in employment tax cases the Internal Revenue Service counterclaims for the balance of the assessment in the taxpayer's refund suit, refraining from taking any steps to enforce collection of the balance pending final disposition of the refund suit, in the absence of jeopardy to the revenue.

Brief for the United States at 8 n.5. In light of our subsequent disposition we need not con-

sider the likelihood of seizure at this juncture. We note in passing, however, that the IRS had a period of at least six months prior to the time suit was instituted in district court in which it had the undisputed power to seize taxpayers' assets. This period having passed without seizure it is unlikely that such action would be instituted during the district court proceedings absent a change in circumstances jeopardizing the revenues—a situation which would likely prompt the district court to set aside its temporary injunction in any event.

for an injunction. For example, it may be possible to conclude that a suit for a refund is not "for the purpose of restraining the assessment or collection of any tax . . . ," and thus that neither the literal terms nor the principal purpose of § 7421(a) is applicable. Moreover, such a suit obviously does not clash with what the Court referred to in *Williams Packing, supra,* as a "collateral objective of the Act—protection of the collector from litigation pending a suit for refund." 370 U.S. at 7–8, 82 S.Ct. [1125] at 1129. . .

*Id.,* 416 U.S. at 748 n.22, 94 S.Ct. at 2051 (citations omitted). The same conclusion was reached in *Commissioner of Internal Revenue v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518, another 501(c)(3) case decided the same day as *Bob Jones:*

. . . As noted in *Bob Jones,* . . we need not decide now the range of remedies available in such a refund suit, which, unlike this suit, is brought pursuant to congressionally authorized procedures.

*Id.* at 763 n.13, 94 S.Ct. at 2059 (citation omitted).

Taken in context, however, these statements offer no comfort to taxpayers' position. A more complete reading of these cases indicates the Supreme Court was concerned with the range of remedies available *after* a final determination had been reached in a refund suit, *viz.,* whether a district court could enjoin the IRS from withdrawing an organization's 501(c)(3) status after the legality of the organization's claim to such status had been judicially determined. Thus, the remainder of the footnote cited from Bob Jones, *supra,* states:

. . . And there would be serious question about the reasonableness of a system that forced a § 501(c)(3) organization to bring a series of backward-looking refund suits in order to establish repeatedly the legality of its claim to tax-exempt status and that precluded such an organization from obtaining prospective

relief even though it utilized an avenue of review mandated by Congress.

The Service indicates that "its normal practice is to issue a favorable ruling upon the application of an organization which has prevailed in a court suit." . . . When the Service adheres to that position *following a refund suit decided in favor of the plaintiff,* there is of course little likelihood that injunctive relief would be necessary or appropriate. But our decision today that § 7421(a) bars pre-enforcement injunctive suits by organizations claiming § 501(c)(3) status unless the standards of *Williams Packing* are met should not be interpreted as deciding whether injunctive relief is possible in a refund suit in a district court. *Id.,* 416 U.S. at 748 n.22, 94 S.Ct. at 2051 (emphasis added) (citations omitted). Indeed, the Supreme Court's statement may be read as a reaffirmation of its primary holding that ". . . § 7421(a) bars *preenforcement* injunctive suits . . . unless the standards of *Williams Packing* are met . . . ." *Id.* (emphasis added).

Taxpayers' final argument that injunctive relief is not barred either by the express language of or the congressional purposes for the Act is that it "was written against the background of general equitable principles disfavoring the issuance of federal injunctions against taxes, *absent clear proof that available remedies at law were inadequate,*" citing *Bob Jones, supra,* at 742 n.16, 94 S.Ct. at 2049 (emphasis added) (citations omitted). Taxpayers claim that a suit for refund and abatement without injunctive relief is an "inadequate remedy at law" derives from their contention that the IRS could in effect "litigate" their suit prior to a final judicial determination simply by seizing taxpayers' assets. Since it is stipulated that seizure would cause irreparable harm to taxpayers by "ruining" their business, taxpayers insist that even if they were ultimately to "win" their suit on the merits they still would have "lost" as a result of the intervening destruction of their business. This, they maintain, cannot be equated with an "adequate" remedy at law.

As previously demonstrated, however, this contention has already been considered and expressly rejected by the Supreme Court.

*Williams Packing* switched the focus of the extraordinary and exceptional circumstances test from a showing of the degree of harm to the plaintiff absent an injunction to the requirement that it be established that the Service's action is plainly without a legal basis. The Court in essence read *Standard Nut* not as an instance of irreparable injury but as a case where the Service had no chance of success on the merits. 370 U.S., at 7, 82 S.Ct. [1125] at 1129. And the Court explicitly held that the Act may not be evaded "merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise." *Id.,* at 6, 82 S.Ct. [1125] at 1129. Yet petitioner's argument that we should find *Williams Packing* inapplicable turns, in the last analysis, on its claim that to do otherwise would subject it to great harm. The Court rejected that consideration in *Williams Packing* itself, and we reject it as a reason for finding that case not controlling. Under the language of the Act, the degree of harm is not a factor, and as a matter of judicial construction, it does not provide a meaningful stopping point between *Standard Nut* and *Williams Packing.* Acceptance of petitioner's irreparable injury argument would simply revive the evisceration of the Act inherent in *Standard Nut.*

*Bob Jones, supra* at 745–46, 94 S.Ct. at 2050. Moreover, in *Flora v. United States, supra,* from which the partial payment exception for "divisible" taxes seems to have developed, the Supreme Court expressly considered the hardship imposed upon taxpayers by requiring full payment of the tax prior to filing suit for a refund in district court. Although the Supreme Court refused to allow refund suits in district courts prior to full payment in cases involving other types of taxes, it expressed no doubt that if such suits were allowed the assets of taxpayers would continue to be subject to

distraint during the pendency of the district court proceedings.

> Of course, the Government can collect the tax from a District Court suitor by exercising its power of distraint—if he does not split his cause of action [by litigating the remainder of his assessment in the Tax Court]—but we cannot believe that compelling resort to this extraordinary procedure is either wise or in accord with congressional intent.

*Id.,* 362 U.S. at 176, 80 S.Ct. at 647. Admittedly, the above-quoted statement is dictum, but in light of the extensive consideration given the *Flora* opinion in the context of a full rehearing, we believe it is "carefully considered dictum" and find its reasoning persuasive. *Id.* at 155, 80 S.Ct. 630.

■ In summary, the literal wording of the Act, the strict pattern of construction adopted by the Supreme Court, and the great deference afforded by the Supreme Court to the government's interest in the prompt collection and enforcement of taxes all require us to conclude that creation of a new judicial exception to the applicability of the Act in suits for refund and abatement is impermissible.

### III

Taxpayers nevertheless contend they have satisfied the requirements for injunctive relief under the exception already created by *Williams Packing, supra.* As previously noted the *Williams Packing* exception requires a showing "that under no circumstances could the Government ultimately prevail" and that "equity jurisdiction otherwise exists." *Id.,* 370 U.S. at 7, 82 S.Ct. at 1129. Although it is stipulated that seizure of taxpayers' assets would result in irreparable injury, the prerequisite for all equitable relief, taxpayers face a heavy burden under the "no circumstances" portion of the *Williams Packing* test. In describing this "stringent standard" the Supreme Court stated that only if it were apparent "on the basis of the information available to the Government at the time of the suit . . . 'that, under the most liberal view of the law and the facts, the United States cannot

establish its claim, may the suit for an injunction be maintained.'" *Bob Jones, supra,* 416 U.S. at 737, 94 S.Ct. at 2046, *citing Williams Packing, supra,* 370 U.S. at 7, 82 S.Ct. 1125. "Thus, in general, the Act prohibits suits for injunctions barring the collection of federal taxes when the collecting officers have made the assessment and claim that it is valid." *Williams Packing, supra* at 8, 82 S.Ct. at 1129.

In the present case an assessment has been made and there is no allegation of bad faith on the part of the IRS. Rather taxpayers' defense is based entirely on an alleged technical defect in the notice of assessment, *viz.,* that the assessment was addressed to Marvel Photo and not to Fred and Angela Marvel in their individual capacities, or to Fred and Angela Marvel dba Marvel Photo, or to Marvel Photo, a partnership, with Fred and Angela Marvel separately listed as partners. Adopting as we must the "most liberal view of the law," we cannot say there are "no circumstances" under which taxpayers could be found to have been engaged in a partnership for tax purposes or that notice addressed to the partnership, albeit without specifically designating it as such, was not sufficient notice to the partners.[2]

Taxpayers having failed to meet their burden of proof under the *Williams Packing* exception, the district court properly denied the requested injunctive relief. The order of the district court is therefore affirmed and the case remanded for further proceedings consistent with this opinion.

---

**2.** This conclusion should not be interpreted as in any way expressing our views on the proper resolution of this issue under the normal standards of proof applicable at trial.