NATIONAL RAILROAD PASSENGER
CORPORATION, a foreign corpora-
tion, Plaintiff-Appellee,

Helen McMaines, Intervening
Plaintiff-Appellant,

v.

KOCH INDUSTRIES, INC., a corpora-
tion, Defendant-Appellant and Third
Party Plaintiff-Appellant,

v.

ATCHISON–TOPEKA & SANTA FE
RAILWAY COMPANY, Third Party
Defendant-Appellee.

No. 79–2241.

United States Court of Appeals,
Tenth Circuit.

Feb. 22, 1983.

John T. Edwards of Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Okl., for Koch Industries, Inc.

Frank A. Greer, Tulsa, Okl., for Helen McMaines.

Tom L. Armstrong of Dyer, Powers, Marsh, Turner & Armstrong, Tulsa, Okl., for Nat. R.R. Passenger Corp. and Atchison-Topeka & Santa Fe Ry. Co.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

In this diversity action, defendant Koch Industries, Inc. and intervenor Helen McMaines appeal the district court's denial of their joint motion for a new trial on liability and damages and its grant of a motion for a new trial on damages only made by plaintiff National Railroad Passenger Corporation (Amtrak). By consent of the parties and as authorized by 28 U.S.C. § 636(b)(2) and local court rule, all proceedings at the district court level were conducted by a magistrate sitting as a special master with final judgment entered at the direction of the chief judge of the district court. Although the jury found Amtrak's comparative negligence to be only 1%, its award to Amtrak was equal to the amount Amtrak paid to third parties and did not cover losses suffered by Amtrak itself. Both sides requested a new trial. The special master concluded that the jury had reached a compromise verdict and recommended a new trial on all issues. But in sustaining Amtrak's objection to the master's recommendation, the district judge instead ordered a new trial on damages only, and certified the question for appeal to this Court. We remand with directions to the district judge to reconsider the motion for a new trial on all issues.

Amtrak brought this suit for damages to its train and for recovery of payments it made to passengers for injuries to their persons and belongings. The damages occurred when the train, traveling at 89.6 miles per hour on a foggy winter morning in Oklahoma, collided with a fully loaded Koch oil truck that was crossing the tracks. The accident ignited the oil, killed the engineer, fireman, and truck driver, heavily damaged the train, and destroyed the truck and its cargo. Because visibility was poor, the train's whistle provided the only warning of the oncoming train. Amtrak contended that the truck never stopped at the crossing to listen for the train (the crossing was marked but had no guard arm or flasher) or that if the truck did stop, its driver had not, as he should have under these conditions, shut off the engine, rolled down the windows, and listened for the train's whistle. Koch and Mrs. McMaines, the wife of the truck driver, contended that Mr. McMaines had stopped at the crossing, and that the train either had waited until it was too close to the crossing to begin blowing its whistle or was traveling too fast for its whistle to be effective.[1]

Although damages were not stipulated, they were uncontested. Amtrak submitted a one-page exhibit, which is reproduced as an attachment to this opinion, claiming thirteen items of damage. The first ten are for damage to the Amtrak locomotives and cars and the last three are for payments it made to passengers for minor injuries and for destruction of their personal property. The first ten figures on the exhibit subtotalled $648,616.49 and the last three subto-

---

1. From inside the cab of a modern truck, a whistle can be heard from only a limited distance. A fully loaded oil truck takes a long time starting from a dead stop to cross the tracks. By Oklahoma law, an oil truck must stop at least fifteen feet from the tracks to look and listen for an oncoming train, and then must cross the tracks without changing gears. Okla. Stat.Ann. tit. 47, § 11–702(a).

talled $25,599.33, with total damages shown as $674,215.82. The jury found that Koch was 99% negligent and Amtrak was 1% negligent, but found Amtrak's total damages to be only $25,599.33, an amount equal to the sum it paid passengers for their losses.

A compromise judgment is one reached when the jury, unable to agree on liability, compromises that disagreement and enters a low award of damages. *Lucas v. American Manufacturing Co.*, 630 F.2d 291, 294 (5th Cir.1980); *Young v. International Paper Co.*, 322 F.2d 820, 823 (4th Cir.1963). While a court may order a new trial on damages only, *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931), it should not do so if it has reason to believe the jury reached a compromise verdict. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2814, at 96 (1973). Because a court does not question jurors about their reasoning processes, it can only speculate how the jury calculated the damage award. To determine whether a verdict is a compromise verdict, a court looks for a close question of liability, a damages award that is grossly inadequate, and other circumstances such as length of jury deliberation. *See, e.g., Vizzini v. Ford Motor Co.*, 569 F.2d 754, 761 (3d Cir.1977); *Hatfield v. Seaboard Air Line Railroad*, 396 F.2d 721, 723 (5th Cir.1968); *Hamasaki v. Flotho*, 39 Cal.2d 602, 248 P.2d 910, 911 (1952). While a grossly inadequate award of damages by itself does not require retrying the liability issue, suspicion should be aroused if the jury awards only nominal damages, *see, e.g., Hatfield v. Seaboard Air Line Railroad*, 396 F.2d 721 (5th Cir.1968) (jury award of $1 when plaintiff had uncontested special damages of $2,795.75 and substantial pain and suffering); *Schuerholz v. Roach*, 58 F.2d 32 (4th Cir.) (jury award of $625 when plaintiff had been blinded in one eye), *cert. denied*, 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541 (1932), disregards uncontested and obvious damages, *see, e.g., Lucas v. American Manufacturing Co.*, 630 F.2d 291 (5th Cir. 1980) (jury award of $3,500 when plaintiff had stipulated special damages of $8,503);

*National Fire Insurance Co. of Hartford v. Great Lakes Warehouse Corp.*, 261 F.2d 35 (7th Cir.1958) (jury award of $3,252.49 when plaintiff had uncontested damages of $6,505.97), or awards a party only its out-of-pocket losses, *see, e.g., Ice-Kist Packing Co. v. J.F. Sloan Co.*, 157 Cal.App. 695, 321 P.2d 840 (1958). "A refusal to allow for undisputed special damages is usually convincing evidence that a jury failed to make a decision of the liability issue." *Hamasaki v. Flotho*, 248 P.2d at 912.

The special master found "no rational connection between the verdict rendered and the facts and evidence presented at the trial." He concluded that the jury had reached a compromise verdict. Therefore, he recommended a new trial on liability as well as damages. Although the special master did not expressly state that he regarded the evidence as presenting a close question of liability, he characterized the liability issue as "hotly contested." Additionally, the cases he cited and quoted from contain statements that closeness of the liability question is a factor to be considered along with gross inadequacy in the damages award.

The difficult issue in this case is determining the deference the district court should have given the master's recommendation and the deference we should give the district court's decision to reject the master's recommendation. The magistrate heard the case while sitting as a special master, *see* 28 U.S.C. § 636(b)(2), and then reported his findings and recommendations to the district judge, who was to review the report in accordance with Fed.R.Civ.P. 53(e). The master's conclusions of law could be freely disregarded, but his findings of fact were to be accepted unless clearly erroneous. *See, e.g., Polin v. Dun & Bradstreet, Inc.*, 634 F.2d 1319, 1321 (10th Cir. 1980) (en banc); *DeCosta v. Columbia Broadcasting System, Inc.*, 520 F.2d 499, 508–09 (1st Cir.1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976).

A trial court's grant or denial of a new trial is not regarded as either a conclu-

sion of law or a finding of fact; instead, appellate courts ask whether the trial court abused its discretion. *Brown v. Richard A. Wacholz, Inc.,* 467 F.2d 18, 19–20 (10th Cir. 1972). If this case had been tried to the district judge and he, on concluding that the jury may have reached a compromise judgment, had ordered a new trial on liability and damages, we would uphold that order unless we were convinced that there was no relationship between the jury's erroneous damage finding and its liability finding. *See Ajax Hardware Manufacturing Corp. v. Industrial Plants Corp.,* 569 F.2d 181, 185 (2d Cir.1977). We would uphold an order of a new trial on damages only unless the record clearly demonstrated a compromise judgment. *See Luria Brothers & Co. v. Pielet Brothers Scrap Iron & Metal, Inc.,* 600 F.2d 103, 115 (7th Cir.1979); *Maher v. Isthmian Steamship Co.,* 253 F.2d 414, 419 (2d Cir.1958). These cases apply a deferential standard quite similar to a clearly erroneous review of findings of fact and dissimilar to no deference review of conclusions of law.

 In the instant case we must apply the abuse-of-discretion test to the trial judge's order for a new trial on damages only. Application by a district court of an erroneous standard of review in passing upon the master's recommendation constitutes an abuse of discretion. *See Polin v. Dun & Bradstreet, Inc.,* 634 F.2d at 1321. Because the recommendation for a new trial is a mixed question of fact and law, we hold that the proper standard of review for the district judge to apply to the master's recommendation of a new trial is the de novo determination applicable to nondispositive matters or references under 28 U.S.C. § 636(b)(3). *See Calderon v. Waco Lighthouse for the Blind,* 630 F.2d 352, 355 (5th Cir.1980); *Hill v. Jenkins,* 603 F.2d 1256, 1258 (7th Cir.1979).[2] De novo determination does not mean a de novo hearing at which the district judge in effect must rehear the evidence. *United States v. Raddatz,* 447 U.S. 667, 674–75, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980). "[I]n providing for a 'de novo determination' rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *Id.* at 676, 100 S.Ct. at 2412. Nevertheless, if the issue involves credibility, the Supreme Court has noted it is unlikely that a district judge would reject the magistrate's views and substitute the judge's own appraisal: "to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions." *Id.* at 681 n. 7, 100 S.Ct. at 2415 n. 7. *See also United States v. Marshall,* 609 F.2d 152, 155 (5th Cir.1980) (only in a "rare case" should a district judge resolve credibility choices in manner contrary to recommendation of magistrate who heard witnesses' testimony); *Bennerson v. Joseph,* 583 F.2d 633, 641 (3d Cir.1978) (district court serves in a reviewing capacity and should not displace master's view of witnesses' credibility).

 The master's conclusion that the jury arrived at a compromise verdict is not a decision based upon credibility of witnesses at trial, but insofar as it is based upon the closeness of a "hotly contested" issue of liability it is similar to a credibility finding. We believe that before the district judge may reject the master's recommendation of a new trial on all issues he must review the transcript. *See Hill v. Duriron Co.,* 656 F.2d 1208, 1215 (6th Cir.1981); *Calderon v. Waco Lighthouse for the Blind,* 630 F.2d at 356.

Here the transcript of the trial had not been filed at the time the district judge held the hearing or when he made his deci-

2. If, as permitted by a 1979 amendment to the Federal Magistrates Act, the magistrate had conducted the trial with appeal directly to this Court, *see* 28 U.S.C. § 636(c), we would be reviewing a magistrate's order of a new trial and no doubt would use something similar to an abuse-of-discretion standard. *Cf. Oliver v. Allison,* 488 F.Supp. 885, 888–89 (D.D.C.1980) (district court's appellate review of magistrate's factual findings governed by clearly erroneous rule).

sion to reject the master's recommendation. Although Fed.R.Civ.P. 53 does not expressly require filing a transcript in nonjury cases, the judge should have required it before overturning the master's recommendation of a new trial. Basing his decision only upon counsels' arguments and his examination of the pleadings and jury verdict forms was not sufficient.

The cause is remanded for proceedings consistent with this opinion.

## EXHIBIT "A"

### SCHEDULE "1"

### DAMAGES

| | | |
|---|---|---|
| 1. | Amtrak Baggage Car No. 1189: | $ 49,883.15 |
| 2. | Amtrak Unit No. 501: | $114,756.25 |
| 3. | Amtrak Unit No. 520: | $404,300.00 |
| 4. | Amtrak Sleeper No. 2726: | $ 1,105.97 |
| 5. | Amtrak Coach No. 5015: | $ 1,538.18 |
| 6. | Amtrak Sleeper No. 2759: | $ 2,044.14 |
| 7. | Amtrak Lounge No. 3382: | $ 1,983.20 |
| 8. | Amtrak Diner No. 8042: | $ 11,709.88 |
| 9. | Amtrak Hi-Couch No. 9910: | $ 5,772.48 |
| 10. | Amtrak Hi-Couch No. 9914: | $ 55,523.24 |
| | Sub-Total: | $648,616.49 |
| 11. | Amtrak's reasonable value paid for luggage destroyed: | $ 17,234.43 |
| 12. | Amtrak's reasonable value paid for passenger's personal property destroyed: | $ 3,009.90 |
| 13. | Amtrak's reasonable good faith settlement paid for passenger's personal injuries: | $ 5,355.00 |
| | Sub-Total: | $ 25,599.33 |
| | TOTAL: | $674,215.82 |