Fred MARVEL and Angela Marvel, d/b/a Marvel Photo, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 80-1497.

United States Court of Appeals, Tenth Circuit.

Oct. 26, 1983.

---

James L. Edgar, Tulsa, Okl., for plaintiffs-appellants.

Anthony Ilardi, Jr., Atty., Dept. of Justice, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup and Carleton D. Powell, Attys., Tax Div., Dept. of Justice, Washington, D.C., Hubert H. Bryant, U.S. Atty., Tulsa, Okl., were also on brief), for defendant-appellee.

Before HOLLOWAY, DOYLE and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

Taxpayers Fred and Angela Marvel appeal from a judgment of the district court finding taxpayers liable for unpaid Federal Insurance Contribution Act (FICA), Federal Unemployment Tax Act (FUTA), and federal withholding taxes. Taxpayers contend that the district court erred (1) in referring their case to a federal magistrate for trial without statutory or constitutional sanction, (2) in finding that certain individuals who performed services for taxpayers' business

were employees rather than independent contractors, (3) in denying taxpayers' motion for summary judgment and permanent restraining order when the notices of assessment were made in taxpayers' trade name, Marvel Photo, rather than taxpayers' individual names, and (4) in assessing penalties. We affirm.

## I

Taxpayers operated a photography business under the name of Marvel Photo for tax years 1966 through 1971. In the course of this business, taxpayers utilized the services of various individuals, some of whom worked at taxpayers' studio and some of whom worked at their own homes. Taxpayers treated all of these individuals as independent contractors and did not collect or pay federal employment taxes.

In September 1974, the IRS issued assessments to Marvel Photo for unpaid FICA, FUTA, and federal withholding taxes for the period of January 1, 1966, through December 31, 1971. On November 1, 1974, the IRS issued a series of "Final Notices Before Seizure" stating that within ten days, and without further notice, any bank accounts, receivables, commissions, or other income or property belonging to taxpayers would be levied upon or seized. On November 6, 1974, taxpayers paid the employment taxes of one alleged employee, for the periods in question, and filed a claim for refund of this partial payment with the IRS. After six months elapsed without a determination of their refund claim by the IRS, taxpayers filed suit in federal district court for refund of the taxes paid and abatement of the remainder of the assessments. The Government counterclaimed for the balance of the unpaid taxes.

In conjunction with their suit, taxpayers moved for a temporary restraining order and preliminary injunction to restrain the IRS from levying on taxpayers' assets during the litigation. The district court, finding its jurisdiction to grant injunctive relief curtailed by the Anti-Injunction Act, 26 U.S.C. § 7421(a), denied the motion, and we affirmed. *Marvel v. United States*, 548 F.2d 295, 301 (10th Cir.), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977).

Prior to trial, the parties stipulated to the employment status of all but thirty-one individuals. The status of the remaining individuals was decided at trial, which, with the parties' consent, was heard before a federal magistrate with the assistance of an advisory jury.

At trial, the advisory jury found that seven individuals were employees and that the remaining twenty-four individuals were independent contractors; only the status of the seven individuals found to be employees is in dispute on this appeal. The district court adopted the magistrate's recommendations, which were in accordance with the findings of the advisory jury. The court also rejected taxpayers' motion for summary judgment and permanent injunction in which taxpayers contended that the notices of assessment to Marvel Photo were defective and therefore invalidated taxpayers' tax liability. From the adverse judgment which resulted, taxpayers brought this timely appeal.

## II

Taxpayers contend that the adjudicatory procedure utilized by the district court, in which the trial of this cause was referred to a United States Magistrate with the consent of the parties, was statutorily and constitutionally infirm. They argue that there was no statutory authorization for such a reference prior to the enactment of the Federal Magistrate Act of 1979.[1] They say further that even if such a trial were statu-

---

1. Pub.L. 96–82, § 2, 93 Stat. 643. The 1979 Act provides explicit authority for a consensual civil trial before a federal magistrate, and also provides for an appeal directly to the appropriate United States court of appeals. 28 U.S.C. §§ 636(c)(1), 636(c)(3) (Supp. V 1981). We express no opinion on the constitutionality of 28 U.S.C. § 636(c), which is not at issue before us.

We note, however, that one court of appeals has held that section 636(c) violates Article III because it allows the magistrate to make the ultimate decision and to enter the final judgment. *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 712 F.2d 1305, 1310 (9th Cir.1983).

torily permissible, the district court, as an Article III court, could not abjure its adjudicatory responsibility by investing other non-Article III judicial officers, such as magistrates, with judicial authority to conduct civil trials.

## A.

The relevant statutory framework which governed magistrates during the period in question was the 1976 amendments to the Federal Magistrates Act. Pub.L. 94–577, § 1, 90 Stat. 2729 (1976). 28 U.S.C. § 636(b) (1976) contains the controlling provisions.[2]

We believe that subsection (b)(2), under which the agreed order of reference was apparently made in this instance,[3] provides statutory authorization for such a consensual reference.[4] As originally adopted in the

**2.** 28 U.S.C. § 636(b) (1976) provides:

(b)(1) Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties. Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

(2) A judge may designate a magistrate to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

(3) A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

(4) Each district court shall establish rules pursuant to which the magistrates shall discharge their duties.

The United States District Court for the Northern District of Oklahoma, from which this case arises, has implemented the statute by promulgating local Rule 34 which sets forth in detail the duties to which a magistrate may be assigned. Among the duties specified is the conduct of trials in civil cases by consent of all the parties. N.D.Okla.R. 34 (amended Apr. 15, 1975).

**3.** There is no record of a written order of reference being made in this case. However, in its November 8, 1978 order adopting the magistrate's findings, the district court stated that the reference was made pursuant to 28 U.S.C. § 636, Rule 53 of the Federal Rules of Civil Procedure, and the local district court rules. Although the particular subdivision of section 636 was not specified, we believe that the most reasonable inference, in view of the citation to Rule 53, is that the reference was made pursuant to subsection (b)(2).

**4.** Alternative authority for the reference can be found in 28 U.S.C. § 636(b)(3) (1976), which broadly provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." That provision has been interpreted by several circuits as permitting consensual references to a magistrate for trial on the merits in civil rights cases and others. *See Coolidge v. Schooner California,* 637 F.2d 1321, 1325–26 (9th Cir.), *cert. denied,* 451 U.S. 1020, 101 S.Ct. 3011, 69 L.Ed.2d 392 (1981); *Calderon v. Waco Lighthouse for the Blind,* 630 F.2d 352, 355 (5th Cir.1980); *Muhich v. Allen,* 603 F.2d 1247, 1251–52 (7th Cir.1979).

Federal Magistrates Act of 1968,[5] section 636(b) authorized magistrates to be appointed as special masters subject to the "exceptional circumstances" restrictions placed on such references by Rule 53(b) of the Federal Rules of Civil Procedure.[6] Significantly, however, in the 1976 amendments to the Act, Congress expressly provided that the restrictions of Rule 53(b) would not apply to consensual references to a magistrate since "no significant purpose is served by restricting the use of magistrates when the parties agree to this procedure. At the same time, Rule 53 contains many important rules governing the powers of masters, the conduct of proceedings before them, and the submission of reports. Thus, subsection 636(b)(2) retains these provisions in any case in which a magistrate is appointed as a special master." H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6162, 6172. It is thus clear that the Federal Magistrates Act, prior to the adoption of the 1979 amendments, authorized reference by the court to a magistrate, as a masters, for trial when the parties consented.

In *National Railroad Passenger Corp. v. Koch Industries, Inc.,* 701 F.2d 108 (10th Cir.1983), a magistrate heard a diversity action while sitting as a special master under 28 U.S.C. § 636(b)(2), and reported his findings and recommendations to the district court in accordance with Fed.R.Civ.P. 53(e). On appeal, the precise issue was the degree of deference the district court should have given to the magistrate's recommendation of a new trial. Nevertheless, we stated that "[b]y consent of the parties and *as authorized by 28 U.S.C. § 636(b)(2) and local court rule,* all proceedings at the district court level were conducted by a magistrate sitting as a special master with final judgment entered at the direction of the chief judge of the district court." 701 F.2d at 109 (emphasis added); *cf. Polin v.*

*Dun & Bradstreet, Inc.,* 634 F.2d 1319, 1321 (10th Cir.1980) (en banc).

Moreover, in the legislative history of the Federal Magistrate Act of 1979, it is evident that Congress not only was aware of the practice of consensual trials before magistrates, but apparently viewed such practice as already authorized by subsections (b)(2) and (b)(3). *See* S.Rep. No. 74, 96th Cong., 1st Sess. 4, *reprinted in* 1979 U.S.Code Cong. & Ad.News 1469, 1473 (1979 Act would "codify and replace the experimental practice now being carried on in a number of districts under 28 U.S.C. 636(b)(2) and (b)(3)"). The basic change resulting from the 1979 Act is that under newly created section 636(c), the decision of the magistrate may be appealed directly to the appropriate court of appeals. Here, of course, the appeal lies not from the order of the magistrate, but from the judgment of the district court.

■ In sum, we hold there is ample statutory authority under 28 U.S.C. § 636(b)(2) to refer a civil case to a federal magistrate for trial on the merits, provided the parties consent to such a procedure.

## B.

Taxpayers further contend that even if the consensual reference to the magistrate were statutorily sanctioned prior to the enactment of the Federal Magistrate Act of 1979, the reference would not be constitutionally permissible under Article III of the Constitution. We disagree.

■ In *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), in reviewing a different section of the Federal Magistrates Act, the Court upheld the constitutionality of a reference to a magistrate of a motion to suppress incriminating statements in a criminal case. The Court pointed out that an Article III judge had made a de novo determination whether to accept, reject or modify, in whole or in

---

**5.** Pub.L. 90–578, title I, § 101, 82 Stat. 1113 (1968).

**6.** Fed.R.Civ.P. 53(b) provides:
A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

part, the findings and recommendations of the magistrate. *Id.* at 673–74, 100 S.Ct. at 2411. In the instant case, as in *Raddatz,* the district court subjected the magistrate's determination to its own final review and entered the final judgment.[7] Therefore, the strictures of Article III were satisfied. *See also Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 78–79, 102 S.Ct. 2858, 2875–76, 73 L.Ed.2d 598 (1982) (plurality opinion).

Taxpayers' reliance on *Taylor v. Oxford,* 575 F.2d 152 (7th Cir.1978), is misplaced. As the Seventh Circuit itself made clear in *Muhich v. Allen,* 603 F.2d 1247, 1250 (7th Cir.1979), *Taylor* did not hold unconstitutional consensual references to a United States Magistrate pursuant to an order of the district court; rather, *Taylor* merely held that magistrates are not empowered to enter final judgments and that the court of appeals was without jurisdiction to entertain direct appeals from judgments entered on orders of a United States Magistrate. In the present case, unlike the situation presented in *Taylor,* the judgment appealed from is a final decision of a United States district court.

Thus, we find no merit in taxpayers' constitutional and statutory challenges to the procedure followed.

### III

The District Director of the Internal Revenue issued four Final Notices Before Seizure to "Marvel Photo" in November 1974, stating that this was to be the final notice and demand before seizure of assets to enforce payment.[8] Taxpayers contend that because the notices were in the name of "Marvel Photo" and not in the name of Fred and Angela Marvel, the notices did not comply with the requirements of 26 U.S.C. § 6303(a) that notice and demand for payment be given to "each person liable for the unpaid tax." Because of these defects in the notices, taxpayers contend the assessments did not comply with statutory and due process requirements and thus invalidated their liability for the taxes.[9]

Although the notices were addressed to taxpayers' business rather than to the individual taxpayers, it is undisputed that taxpayers, doing business as Marvel Photo,[10] actually received the notices and that the notices listed the correct taxpayer identification number. Taxpayers' counsel concedes this was the same identification number that taxpayers had inserted in Schedule C of their income tax return. Thus, taxpayers cannot seriously contend that the notices to the business did not operate to give actual notice to each of the taxpayers. We conclude that the assessments were valid and effective as to the individual plaintiffs, being issued in the trade name which they themselves adopted.

However, even if we assume that the notices were defective in failing to name the individual taxpayers, such a defect would not affect the taxpayers' liability or defeat the Government's counterclaim

---

7. Fed.R.Civ.P. 53(e) governs the district court's review of a magistrate's recommendations when the magistrate is appointed pursuant to 18 U.S.C. § 636(b)(2) (1976). *National Railroad Passenger Corp. v. Koch Industries, Inc.,* 701 F.2d 108, 110 (10th Cir.1983). Here the district court properly reviewed the magistrate's findings of fact under the clearly erroneous standard, and reviewed his conclusions of law.

8. There is no indication in our record and no contention by the taxpayers that, to this time, the Government has attempted any seizure of assets.

9. Taxpayers advance the same argument with respect to the February 5, 1974 Summaries of Employment Tax Audit and the September 1974 Statements of Adjustment for Taxes Due,

which likewise were addressed to Marvel Photo rather than to Fred and Angela Marvel. Taxpayers also say that the assessments were invalid because Marvel Photo was not a "person" within the meaning of 26 U.S.C. § 7701(a)(1) (1976). In view of our discussion below that an assessment is not a necessary premise for the tax liability, and in view of the Government's assertion of liability against the taxpayers individually in its counterclaim, we find these arguments to be without merit.

10. The taxpayers' complaint herein alleged that "Plaintiffs, Fred Marvel and Angela Marvel, d/b/a Marvel Photo, have their principal place of business at 1417 East Second Street, Tulsa, Oklahoma." (I R. 7). The form of business arrangement is not alleged, but we assume that if not partners, they were joint venturers. *See* 26 U.S.C. § 7701(a)(2) (1976).

for the unpaid taxes. Unlike the old theory of ad valorem taxation, under which liability for a tax depended on a formal act of assessment, there is no requirement in the Internal Revenue Code that before liability for employment taxes accrues, a notice of deficiency or assessment be given. *Macatee, Inc. v. United States,* 214 F.2d 717, 720 (5th Cir.1954). Rather, liability arises by virtue of the statutory duties that are imposed to collect and pay over the taxes. *See* 26 U.S.C. §§ 3101, 3102, 3301, 3402 (1976).

*F.P. Baugh, Inc. v. Little Lake Lumber Co.,* 297 F.2d 692 (9th Cir.1961), and *Coson v. United States,* 169 F.Supp. 671 (S.D.Cal. 1958), *modified,* 286 F.2d 453 (9th Cir.1961), on which taxpayers rely, are readily distinguishable. In *Baugh,* the Government sought to foreclose a tax lien against a partnership. The notice of federal tax lien, however, designated as the name of the taxpayer the name of a single partner, followed by the term "et al." The court held that the notice was insufficient to perfect a lien against a chattel mortgagee of partnership property as to the interests of the unnamed partners. *Coson* similarly involved the validity of a federal tax lien. The taxpayer there had joined a partnership believing that he was limited partner but subsequently learned that the partnership was not a limited partnership and gave prompt notice of renunciation on ascertaining his mistake. The court of appeals held that the Government's notice to the partners to pay the federal taxes was not such notice to the taxpayer as would give the Government a tax lien on certain of his real property. Thus, both *Baugh* and *Coson* deal with the question of whether a federal tax lien was properly perfected. They do not stand for the principle that an inadequate notice bars the Government from obtaining a judgment for tax liabilities due and owing by taxpayers, whether or not named in the notice and demand for payment.

■ Taxpayers also contend that the notices made in taxpayers' trade name somehow violate their constitutional right to due process. As stated earlier, an assessment or notice of deficiency is not a prerequisite to the assertion of a tax liability here and, beyond that, taxpayers concededly had actual notice that the assessments were made. It is also evident that taxpayers have had a full opportunity to litigate their claims on the merits. Accordingly, we find no merit to taxpayers' due process argument.

## IV

With the assistance of an advisory jury, the magistrate made findings and recommendations, which the district judge accepted, that seven of the thirty-one individuals whose employment status was in issue were employees rather than independent contractors. Taxpayers contend that the findings were clearly contrary to the record and controlling authority.

■ An individual is an employee for federal employment tax purposes if he has the status of employee under the usual common law rules applicable in determining the employer-employee relationship. 26 U.S.C. §§ 3121(d), 3306(i), 3401(c) (1976). Guides for determining that status are found in three substantially similar sections of the Employment Tax Regulations. 26 C.F.R. §§ 31.3121(d)–1, 31.3306(i)–1, 31.3401(c)–1 (1976). Generally, the relationship of employer and employee exists when the person for whom the services are performed has the right to direct and control the method and manner in which the work shall be done and the result to be accomplished, while an independent contractor is one who engages to perform services for another according to his own method and manner, free from direction and control of the employer in all matters relating to the performance of the work, except as to the result or the product of his work.[11]

11. Other factors that may be considered include: (1) the substantiality of the investment of the person rendering the service in his own tools and equipment; (2) the cost incurred by the alleged employee in rendering the service, as by the employment of his own laborers; (3) the ability of the person rendering the service to profit from his own "management skill"; (4) whether or not the service involved requires a special skill; (5) the permanency of the relationship between the parties; and (6) whether

In reviewing the trial court's findings, we are mindful that the determination of whether an individual is an employee is a question of fact and will not be disturbed on appeal unless it is clearly erroneous.[12] See *Hoosier Home Improvement Co. v. United States,* 350 F.2d 640, 643 (7th Cir. 1965). We cannot say that the trial court's findings here that the seven individuals were employees rather than independent contractors are clearly erroneous.

Three of the individuals, Mike Warren, Ronnie Cooper, and Danny Allfred, were delivery boys. With respect to Mike Warren, Fred Marvel testified that he performed delivery services for the Marvels, that he used his own car and furnished his own gas, and that the Marvels did not set his hours. (III R. 77–79). However, his mother, Mae Ellen, testified that in addition to making deliveries, her son dried pictures at the studio daily from noon to five o'clock and that the Marvels reimbursed him for the cost of gasoline. (III R. 149–55). Taxpayers' assertion that Warren was an independent contractor providing only delivery services was undermined, and the trial court was justified in concluding otherwise. With respect to Ronnie Cooper and Danny Allfred, Angela Marvel testified that all the delivery boys were treated the same way, were paid on the same basis, and that control and discretion were all the same. (III R. 123). Thus, the trial court's finding that they also were employees was not without a sufficient factual basis.

Evelyn Offenbacher, an oil colorist, was also found to be an employee. Although most of the other oil colorists were determined to be independent contractors, Angela Marvel testified that Evelyn Offenbacher did other work for the Marvels in the shop such as packaging proofs and cutting strips of film. (III R. 122). Lucille Sanders Towery, Evelyn's sister, corroborated this testimony, stating that Evelyn performed work on identification pictures at the studio and occasionally did some retouching at home. (III R. 132). Based on this testimony, the finding that Evelyn Offenbacher was an employee cannot be rejected as clearly erroneous.

Lucille Sanders Towery performed retouching services for the Marvels, but unlike other retouchers, was found to be an employee. This result, however, is justified by Mrs. Towery's own testimony. Mrs. Towery stated that in addition to retouching at home she performed various duties at the studio such as taking pictures, "spotting" (removing white spots from photographs), cutting negatives, drying proofs, and working as a receptionist and telephone operator. (III R. 127–29). She explained that she had definite hours of employment for her studio work and was paid an hourly basis for that work. (III R. 129–31). Finally, she said that Angela Marvel had represented to her that Marvel Photo would take care of her taxes. (III R. 130). Once again, there was a sufficient factual basis for the trial court to find that Mrs. Towery was an employee.

Sue Foley, a darkroom worker, was also found to be an employee rather than an independent contractor. Taxpayers emphasize Fred Marvel's testimony that Mrs. Foley carried a key to the shop and "worked about when she wanted to." (III R. 92). When Mrs. Foley was called as a witness, however, she denied that she had a key to the shop. (IV R. 12). Moreover, her testimony makes clear that the Marvels exercised supervision and control over her work. She stated that she was paid by the hour (IV R. 7); that she worked regular hours (IV R. 13); that her hours were set by her supervisor (IV R. 13); and that she was paid for an injury that she had sustained on

the person rendering the service works in the course of the recipient's business rather than in an ancillary capacity. *Avis Rent A Car System, Inc. v. United States,* 503 F.2d 423, 429 (2d Cir.1974).

**12.** Although an advisory jury was employed in this instance, the findings of such a jury are, of course, merely advisory; the trial court must, as it did in this instance, make its own findings and "[r]eview on appeal is of the findings of the court as if there had been no verdict from an advisory jury." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2335, at 127 (1971).

the job. (IV R. 8). Finally, she said it was her understanding that the Marvels would take care of her taxes. (IV R. 9). In considering this evidence, the trial court was fully justified in concluding that she was an employee rather than an independent contractor.

■ Perhaps taxpayers' most substantial challenge is to the finding that Betty Briggs was an employee. However, in their testimony at trial, Fred and Angela Marvel were unable to state with any certainty whether Betty Briggs worked only as an oil colorist or whether she performed office work. (III R. 118, 124–25). Fred Marvel did testify that he was not positive about Betty Briggs, but that to the best of his knowledge, all she did was oil coloring. (III R. 118). Nonetheless, because the testimony is indefinite, and because taxpayers had the burden of proof to show that the individual was an independent contractor, the assessments having been admitted in evidence, *see Fidelity Bank, N.A. v. United States,* 616 F.2d 1181, 1186 (10th Cir.1980); *Psaty v. United States,* 442 F.2d 1154, 1160 (3d Cir.1971); *cf. United States v. Janis,* 428 U.S. 433, 441–42, 96 S.Ct. 3021, 3025–26, 49 L.Ed.2d 1046 (1976), we cannot say that the trial court's determination was clearly erroneous.

In sum, we are satisfied that the findings challenged were not clearly erroneous and should be sustained.

### V

Finally, taxpayers contend that the penalties imposed on them were inappropriate in that they were punitive, that there was in any event an honest controversy over the tax liability, and that the imposition of the penalties violates the intent of the statutes and due process.

■ We cannot uphold the arguments since the taxpayers failed to make the required showing in the record to challenge the penalties. Penalties clearly were sought in the amounts demanded by the Government in its counterclaim. *See* I R. 31–34. Under the statutes and the regulations, to defeat the penalties there must be a showing that the taxpayers' default was

due to reasonable cause and not due to willful neglect. *See* 26 U.S.C. §§ 6651(a)(1), 6651(a)(2), 6656(a) (1976); 26 C.F.R. §§ 301.6651–1(c), 301.6656–1(a)(2) (1976). The taxpayers raised no issue concerning the penalties in the pretrial order. *See* I R. 111–19. Accordingly, no findings or conclusions were made concerning the taxpayers' challenges now made to the penalties. Therefore, the issue is not properly presented for our review.

AFFIRMED.